682 So.2d 1296 (1996)
James WILKINSON and Frances Wilkinson
v.
LOUISIANA INDEMNITY/PATTERSON INSURANCE.
No. 96 CA 0447.
Court of Appeal of Louisiana, First Circuit.
November 8, 1996.
*1297 S. Alfred Adams, Baton Rouge, for plaintiffs/appellants James and Frances Wilkinson.
Donna Bramlett Wood, Baton Rouge, for defendant/appellee Louisiana Indemnity/Patterson Insurance Company.
Before WHIPPLE, PITCHER and FITZSIMMONS, JJ.
WHIPPLE, Judge.
This is an appeal by plaintiffs, James and Frances Wilkinson, from a trial court judgment, granting the motion for summary judgment filed by defendant, Louisiana Indemnity Insurance Company, now known as Patterson Insurance Company ("Patterson"), on the finding that the automobile liability policy issued to plaintiffs by Patterson did not provide uninsured/underinsured motorist *1298 ("UM") coverage. For the following reasons, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
On May 13, 1989, plaintiff, James Wilkinson, initially obtained a policy of automobile liability insurance bearing policy number 3L 3016121 from Patterson. The bodily injury liability limits under the Patterson policy were $10,000/$20,000, and the policy also provided uninsured motorist (UM) coverage of $10,000/$20,000. Becky Wilkinson, Mr. Wilkinson's wife at that time, was also listed as a named insured driver, and the policy covered a 1982 Dodge pickup truck and a 1987 Chevrolet Cavalier.
Subsequently, James and Becky Wilkinson separated, and as a result, Becky Wilkinson and the 1987 Chevrolet Cavalier were deleted from the policy effective July 17, 1989. From May 1989 to May 1992, the Patterson policy was regularly renewed at six-month intervals, and each renewal provided UM coverage with limits of $10,000/$20,000. While the record does not reveal why the policy number changed, when Patterson policy number 3L 3016121 was renewed for the policy period of May 13, 1990 to November 13, 1990, a new policy number, 4L 4012868, was assigned to the policy.
When the Patterson policy was renewed on May 13, 1992, it was renewed for one year, rather than six months, and it again provided UM coverage with $10,000/$20,000 limits. However, several changes were made to the Patterson policy during this one-year policy period. On June 9, 1992, a 1992 Mitsubishi Mighty Max pickup truck was added as a second vehicle to the policy. The coverage provided on this vehicle included liability coverage with bodily injury limits of $10,000/$20,000, UM coverage with limits of $10,000/$20,000, and comprehensive and collision coverage.
Additionally, on August 4, 1992, during the one-year policy period, Mr. Wilkinson contacted Cathy Cobb, the insurance secretary at Southeastern Insurance Agency, apparently seeking to reduce his insurance premiums. As a result of this conversation, Ms. Cobb mailed Mr. Wilkinson a UM rejection form which read, in pertinent part, as follows:

UNINSURED MOTORISTS COVERAGE REJECTION

POLICY HOLDER'S REJECTION OF INSURANCE

PROTECTION AGAINST UNINSURED MOTORISTS
The undersigned insured hereby rejects Protection Against Uninsured Motorists as provided in Louisiana Revised Statutes 22:1406 from Policy Number 4L4012868 and subsequent renewals issued by Louisiana Indemnity [n/k/a Patterson Insurance Company].
Mr. Wilkinson signed the UM rejection form, and effective August 5, 1992, UM coverage was canceled on both vehicles covered by the Patterson policy (the 1982 Dodge pickup truck and the 1992 Mitsubishi Mighty Max pickup truck).
An additional change was made to the Patterson policy on August 14, 1992, when Frances Lofton Wilkinson, Mr. Wilkinson's new wife, was added as an additional driver on the policy. No other significant changes were made to the policy during this one-year policy period, nor was a new UM rejection form executed by the Wilkinsons at the time Mrs. Frances Wilkinson was added to the policy.[1]
On March 5, 1993, Frances Wilkinson was involved in an automobile accident, while driving the 1992 Mitsubishi pickup truck. The accident allegedly occurred when Roman Firmin proceeded through a red traffic signal and collided with the vehicle being driven by Frances Wilkinson.
Thereafter, the Wilkinsons instituted the instant action against Patterson, averring that the Patterson policy in effect on the date of the accident provided the Wilkinsons with UM coverage and that any UM rejection form previously submitted to them failed to comply with the mandates of Louisiana law and, thus, was a complete nullity.
Patterson filed an answer, specifically denying that the Patterson policy in question provided the Wilkinsons with UM coverage *1299 and averring that the UM rejection form executed by Mr. Wilkinson complied with LSA-R.S. 22:1406. Thereafter, Patterson filed a motion for summary judgment on the issue of UM coverage, contending that there were no genuine issues of material fact in dispute and that it was entitled to judgment as a matter of law. Patterson contended that the UM rejection form executed by Mr. Wilkinson was clear and unambiguous and was in compliance with LSA-R.S. 22:1406.
In opposition to Patterson's motion for summary judgment, the Wilkinsons argued that the UM rejection form in question did not place the insured in a position of making an "informed rejection" of UM coverage, which requires that the insured be given a "meaningful selection" from the options provided to him by statute. They reasoned that because the form did not provide them with a "meaningful selection" of the two options available to them, UM coverage equal to bodily limits or no UM coverage, it failed to meet the requirements of Tugwell v. State Farm Insurance Company, 609 So.2d 195 (La.1992), and its progeny.[2]
On August 21, 1995, a hearing was held on the motion for summary judgment, and in oral reasons, the trial court found as follows:
We know that U.M. was canceled on August the 5th. Tugwell doesn't stand for anything that's involved in this case, in my opinion. This is not a rejection case.... This is a case where there has been coverage issued. Now the person desires to eliminate certain coverage. Your rejection case is where people make application for insurance that there's not an existing policy. So Tugwell, in my opinion, is not applicable, and it's not a rejection case. I believe that when Mr. Wilkinson requested the elimination of U.M. and he signs the form asking that it be rejected, it means eliminated.... I don't know what more the insurance agent can do when their client requests elimination [of] certain coverage. So the court will grant the motion for summary judgment filed on behalf of Patterson Insurance Company.
By judgment dated August 29, 1995, the trial court granted Patterson's motion for summary judgment and dismissed plaintiffs' claims with prejudice. From this judgment, plaintiffs appeal, averring that the trial court erred in: (1) concluding that plaintiffs' claim was not one requiring Tugwell analysis, (2) concluding that there was no material issue of fact as to plaintiffs' understanding and intent in canceling UM coverage, and (3) allowing the introduction of improper evidence by Patterson at the summary judgment hearing.
At oral argument in this matter, the parties were given ten days to file supplemental briefs to address the effect, if any, of this court's decision in Waller v. Automotive Casualty Insurance, 95-2108 (La.App. 1st Cir. 6/28/96); 680 So.2d 675, on the present case. Both parties responded, and in plaintiffs' supplemental brief, they listed an additional assignment of error as follows: (4) The trial on court erred in dismissing plaintiffs' claim when there was a change in the policy after the execution of a written waiver form which would have required the execution of a new UM waiver form.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Kidd v. Logan M. Killen, Inc., 93-1322, p. 4 (La.App. 1st Cir. 5/20/94); 640 So.2d 616, 618. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966;[3]Potter v. First *1300 Federal Savings and Loan Association of Scotlandville, 615 So.2d 318, 325 (La.1993).
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Potter, 615 So.2d at 325; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991).

EFFECT OF SUBSEQUENT ADDITION OF FRANCES WILKINSON AS A NAMED INSURED
As stated above, at oral argument in this matter, the parties were given ten days to file supplemental briefs to address the effect, if any, of this court's decision in Waller on the outcome of the present case. In Waller, this court held that the addition of an insured driver to an existing automobile liability insurance policy, without any change in the bodily injury limits, increases the policy's coverage and constitutes a new policy, requiring the execution of a separate selection/rejection of UM coverage. This court further held that in the absence of a separate selection/rejection of UM coverage executed at the time of the addition of the new insured driver, UM coverage is afforded as a matter of law. Waller, 95-2108 at p. 11; 680 So.2d at 681.
Frances Wilkinson was added as a named insured to the policy at issue subsequent to Mr. Wilkinson's execution of the UM rejection form on August 5, 1992, and no new UM rejection form was executed at the time she was added as a named insured. Because the last significant change made to the policy was the addition of Frances Wilkinson as a named insured and, thus, the applicability of Waller could be dispositive on the issue of UM coverage herein, we first address whether the addition of Frances Wilkinson as a named insured required the execution of a new UM waiver form.
In its supplemental brief, Patterson argues that the facts of the present case are distinguishable from those of Waller. We agree. In Waller, Patrick and Nancy Dempsey obtained a policy of insurance and subsequently made a change to the policy to add Nicole Marino as an additional insured driver under the policy. Although the exact relationship between the Dempseys and Marino is not apparent from the opinion in Waller, it is clear that Marino was not Patrick Dempsey's spouse.[4]Waller, 95-2108 at p. 2; 680 So.2d at 676.
In the instant case, Frances Wilkinson was the spouse of Mr. Wilkinson at the time she was added to the policy as an insured driver.[5] The policy at issue herein defines the insured "[w]ith respect to the insurance for bodily injury liability and for property damage liability," in pertinent part, as "the named Insured and, if the named Insured is an individual, his spouse if a resident of the same household." (Emphasis added). For purposes of UM liability, "insured" is defined, in pertinent part, as "the named insured and, while residents of the same household, his spouse and the relatives of either." (Emphasis added). Thus, from the time the policy in question was issued, Patterson bound itself to provide coverage to Mr. Wilkinson's wife, as evidenced by the definition of "insured" in the policy.[6]
Therefore, we conclude that the formal addition of Frances Wilkinson as a named insured did not have the effect of increasing the policy's coverage, and as such, it did not constitute a new policy requiring the execution of a separate UM selection/rejection form. Thus, this court's analysis in Waller is *1301 not dispositive under the facts presented herein.

VALIDITY OF REJECTION OF UM COVERAGE

(Assignment of Error No. 1)
In their first assignment of error, plaintiffs contend that the trial court erred in concluding that their claim was not one requiring Tugwell analysis. We agree.
LSA-R.S. 22:1406(D)(1)(a)(i) mandates UM coverage in an amount not less than the limits of bodily injury liability coverage, unless the insured rejects that coverage in writing or selects lower limits.[7]Tugwell, 609 So.2d at 196-197. In Tugwell, the Louisiana Supreme Court reiterated the requirements for a valid rejection or selection of lower limits:
This court has held a valid rejection or selection of lower limits must be in writing and signed by the named insured or his legal representative. Further, the insurer must place the insured in a position to make an informed rejection of UM coverage. In other words, the form used by the insurance company must give the applicant the opportunity to make a "meaningful selection" from his options provided by the statute: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, or (3) no UM coverage.

Tugwell, 609 So.2d at 197 (citations omitted).
When the insured's bodily injury coverage is $10,000/$20,000, there is no UM coverage available to the insured for limits lower than the bodily injury limits in the policy. See LSA-R.S. 22:1406(D)(1)(a)(i); LSA-R.S. 32:900(B)(2); Morgan v. Sanchez, 94-0090 (La.App. 1st Cir. 4/15/94); 635 So.2d 786, 787. Thus, the insurer's form is only required to provide the options of accepting UM coverage equal to bodily injury limits or rejecting UM coverage outright, to meet the requirements of Tugwell. Otherwise, the form is defective as a matter of law, and UM coverage equal to bodily injury limits is afforded the insured by operation of law. Banks v. Patterson Insurance Company, 94-1176, p. 4 (La.App.9/14/95); 664 So.2d 127, 129, writ denied, 95-2951 (La.2/16/96); 667 So.2d 1052.
Moreover, the expression of a desire not to have UM coverage, however clear, does not constitute a valid rejection if the written expression of rejection does not meet the formal requirements of law. See Jordan v. Honea, 407 So.2d 503, 506 (La.App. 1st Cir.1981), writs denied, 409 So.2d 654, 660 (La.1982).
However, as stated above, the trial court concluded that because the facts herein involved a change made to an existing policy rather than an application for a new policy, the dictates of Tugwell were not applicable to this case. We find that a careful reading of LSA-R.S. 22:1406 does not support the trial court's conclusion.
Where there has been a valid rejection of UM coverage, that initial valid rejection or selection of lower limits in connection with a previously issued policy is also valid for renewal, reinstatement, or substitute policies. LSA-R.S. 22:1406(D)(1)(a)(i);[8]Troha *1302 v. State Farm Insurance Company, 606 So.2d 89, 90 (La.App. 3rd Cir.1992); Ruiz v. Lewis, 579 So.2d 1203, 1206-07 (La.App. 4th Cir.), writ denied, 586 So.2d 562 (La.1991). Conversely, it is only logical that in the absence of an initial valid rejection, the renewal, reinstatement or substitute policy is mandated by statute to provide UM coverage, unless a valid UM rejection is executed in connection with the renewal, reinstatement or substitute policy.
In the instant case, no valid UM rejection form had ever been executed prior to the August 5, 1992 change in policy coverage, wherein UM coverage was deleted from the Patterson policy. We conclude that the August 5, 1992 change endorsement, which attempted to delete UM coverage from the existing policy, was a substitute policy.[9] A substitute policy has been jurisprudentially defined to include situations where there has been a substitution of insureds and/or vehicles, Waller, 95-2108 at p. 9; 680 So.2d at 680, and situations where there is coverage and an agreement is made for different coverage. Bryant v. Viking Insurance Company of Wisconsin, 579 So.2d 1241, 1243 (La. App. 3rd Cir.1991). Prior to execution of the change endorsement eliminating UM coverage from the policy, there had been an agreement for coverage including UM coverage. Thereafter, that policy was substituted to delete UM coverage.[10]
Thus, in the absence of prior valid rejection, this substitute policy was mandated by statute to provide UM coverage, unless a valid UM rejection was executed at that time. LSA-R.S. 22:1406(D)(1)(a)(i); see also Sentilles v. State Farm Mutual Automobile Insurance Company, 443 So.2d 723, 727 (La. App. 4th Cir.1983), writ denied, 445 So.2d 437 (La.1984). The trial court erred in concluding that the August 5, 1992 UM rejection form executed at the time of the substitution of coverage, which was the first UM rejection form ever executed by Mr. Wilkinson, did not have to be analyzed under the requirements of Tugwell and its progeny.
Therefore, the inquiry becomes whether, under the dictates of Tugwell and its progeny, the August 5, 1992 UM rejection executed by Mr. Wilkinson constituted a valid UM rejection form, entitling Patterson to judgment as a matter of law, dismissing plaintiffs' claim. In Banks, 94-1176 at p. 4; 664 So.2d at 129, this court evaluated the exact UM rejection form at issue herein and concluded that it failed to meet the requirements of Tugwell inasmuch as it did not provide the insured with the option of selecting UM coverage equal to bodily injury limits. Thus, the form foreclosed informing the insured of an option required by law. In view of this defect, there is no need to address the question of whether Mr. Wilkinson was sufficiently informed of the available options. See Banks, 94-1176 at p. 4; 664 So.2d at 129. Therefore, Patterson has failed to prove that it is entitled to judgment in its favor as a matter of law.[11]

CONCLUSION
Considering the foregoing, the August 29, 1995 judgment of the trial court, granting Patterson Insurance Company's motion for summary judgment and dismissing the Wilkinsons' suit with prejudice, is reversed. *1303 The matter is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed against defendant, Patterson Insurance Company.
REVERSED AND REMANDED.
NOTES
[1] An endorsement, amending the lienholder's address, was executed on June 15, 1992.
[2] When the insured's bodily injury coverage is $10,000 per person/$20,000 per accident, there is no UM coverage legally available to the insured for limits lower than $10,000/$20,000. Therefore, the insurer need not offer UM coverage at non-existent lower limits. Banks v. Patterson Insurance Company, 94-1176, p. 4 n. 1 (La. App. 1st Cir. 9/14/95); 664 So.2d 127, 129 n. 1, writ denied, 95-2951 (La.2/16/96); 667 So.2d 1052.
[3] After the rendition of this case in the court below, LSA-C.C.P. art. 966 was amended by Acts 1996, First Extraordinary Session, No. 9, effective May 1, 1996, to provide that summary judgment is favored, to provide that the burden of proof remains with the mover and to clarify the showing required from the opposing party. Article 966 now provides that the motion shall be granted if no genuine issue of material fact remains and the mover is entitled to judgment as a matter of law. To defeat the motion, the opposing party must "make a showing sufficient to establish the existence of proof of an element to his claim ... on which he will bear the burden of proof at trial."
[4] Nancy Dempsey was Patrick Dempsey's spouse. Waller, 95-2108 at 2; 680 So.2d at 676.
[5] Mr. Wilkinson married Frances Wilkinson in 1990; however, he did not formally add her as a named insured under the policy until August 14, 1992.
[6] In fact, no additional premium was charged when Mr. Wilkinson formally added Frances Wilkinson as a named insured.
[7] LSA-R.S. 22:1406(D)(1)(a)(i) provides, in pertinent part, as follows:

No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subsection unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900.
[8] LSA-R.S. 22:1406(D)(1)(a)(i) provides, in pertinent part, as follows:

Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates.
[9] This change in policy could not have been either a renewal or reinstatement policy. A renewal policy is defined by LSA-R.S. 22:636.1(A)(5) as one issued and delivered at the end of a policy period to replace a policy previously issued and delivered by the same insurer. Troha, 606 So.2d at 91. Moreover, a reinstatement policy contemplates that the insured be restored to all the benefits accruing under the policy contract, and as such, it is necessary that there be an interval during which the insured is no longer covered by insurance. Troha, 606 So.2d at 91.
[10] Of course, if the agreement had been to increase the policy's coverage, rather than decrease it, the change would have constituted a new policy, requiring execution of a separate UM selection/rejection form. Waller, 95-2108 at p. 11; 680 So.2d at 680.
[11] Because of our resolution of the UM coverage issue under plaintiffs' assignment of error number one, we pretermit discussion of the remaining assignments of error.