**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-30736

MARY KATHLEEN MATHENY, individually and on behalf of her minor children rpi WESLEY MATHENY, and rpi JOSEPH MATHENY,

Plaintiffs-Appellants,

VERSUS

THE GLEN FALLS INSURANCE COMPANY and CONTINENTAL INSURANCE COMPANY,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Louisiana

August 20, 1998

Before BARKSDALE, BENAVIDES, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Mary Kathleen Matheny, individually and on behalf of her minor child, Wesley Matheny, and Joseph Matheny, her major son, appeal the district court's grant of summary judgment in favor of The Glen Falls Insurance Company and Continental Insurance Company. Because we conclude that the addition of Joseph Matheny as a newly licensed driver to the automobile insurance policy constituted a "new" policy, the absence of a UM selection/rejection by either of the

named insureds subsequent to the addition of Joseph to the policy resulted in UM coverage under the policy in an amount equal to the policy's bodily injury liability insurance limits.

I.

On May 3, 1993, Jeffrey and Mary Kathleen Matheny applied for a policy of automobile insurance from Glen Falls Insurance Company (Glen Falls). The Mathenys rejected Uninsured/Underinsured Motorist (UM) protection on May 6, 1993. Glen Falls issued an automobile insurance policy to Jeffrey and Mary Kathleen Matheny on June 9, 1993.[1] By General Change Amendment to the policy, the Mathenys added their son, Joseph, as an additional driver to the policy on June 28, 1994.[2] The Mathenys were not offered and did not reject UM coverage after they added Joseph to their policy. Jeffrey Matheny was killed as the result of an automobile accident on September 24, 1994.

The plaintiffs-appellants (Matheny) filed suit in Louisiana state court against the defendants-appellees (Glen Falls) on September 19, 1996, seeking UM coverage for Jeffrey's accident. Glen Falls removed the case to federal court on October 30, 1996. The parties submitted the case on cross motions for summary

---

[1] The policy's inception date dated back to the date of the application, May 3, 1993.

[2] The Mathenys have two children, Joseph C. Matheny, born June 23, 1977, and Wesley A. Matheny, born October 28, 1980.

judgment. On April 14, 1997, the district court granted Glen Falls's motion for summary judgment and denied Matheny's motion for summary judgment. The district court concluded that the addition of Joseph Matheny, the minor child of the named insureds, did not constitute a "new" policy requiring the execution of a UM rejection/selection form. As such, the initial rejection of UM coverage on May 6, 1993, remained effective. On April 25, 1997, Matheny filed a motion to submit newly discovered evidence, to re-open the case, and for a new trial. The court denied this motion on June 20, 1997. The summary judgment entered against Matheny is a final, appealable judgment.

## II.

Matheny seeks to recover UM benefits under the Glen Falls policy notwithstanding the rejection executed by the Mathenys on May 6, 1993. Louisiana law requires UM coverage to be included in every automobile liability insurance policy in an amount equal to the limits of bodily injury liability insurance unless the named insured or his legal representative rejects this coverage or selects lower limits. LSA-R.S. 22:1406(D)(1)(a)(i). UM coverage is not required with respect to a "renewal, reinstatement, or substitute policy" if the named insured has rejected such coverage or selected lower limits in connection with a policy previously issued. Id. Matheny argues that the addition of a child as an insured driver to the policy resulting in a dramatic increase in

3

the premium charged constitutes a "new" policy rather than "a renewal, reinstatement, or substitute policy." As such, asserts Matheny, the addition to the Glen Falls policy of Joseph Matheny as an insured driver resulted in UM coverage equal to the bodily injury liability limits of the policy as UM coverage was not rejected subsequent to this event. Glen Falls argues that the Louisiana jurisprudence is contrary to this assertion.

As this issue is one of state law which the Supreme Court of Louisiana has not addressed, we must look to the Louisiana intermediate appellate courts for assistance. <u>Matter of Brocato</u>, 30 F.3d 641, 642-43 (5th Cir. 1994); <u>Lavespere v. Niagara Machine and Tool Works, Inc.</u>, 920 F.2d 259, 260 (5th Cir. 1990)(denial of rehearing). After doing so, we conclude that the addition of Joseph Matheny to the Glen Falls policy created a "new policy." As UM coverage was not rejected by the Mathenys subsequent to this addition, we conclude that the Glen Falls policy provided UM coverage in an amount equal to the bodily injury liability limits of the policy.

A "renewal" policy is one issued and delivered to replace, at the end of the policy period, a policy previously issued and delivered by the same insurer. LSA-R.S. 22:636.1A(5). Thus, a renewal occurs only at the end of the policy period and contemplates continued uninterrupted coverage. <u>Dempsey v. Automotive Casualty Ins.</u>, 680 So.2d 675, 679 (La. Ct. App. 1st Cir. 1996). A renewal does not occur if the second issuance occurs

4

before the end of the first policy period. Id. A "reinstatement" policy is one that is issued after an interval in which the insured is not covered by that insurer and restores the insured to all the benefits accruing under the policy. Id. It is clear that the policy in question is neither a renewal nor reinstatement policy as Joseph was added as a driver during a policy period rather than at the end and there was no interval during which the policy was not effective. Resolution of this case, therefore, turns on whether the addition of Joseph Matheny to the Glen Falls policy resulted in a "substitute" policy.

In Lewis v. Lenard, 694 So.2d 574, 577 (La. Ct. App. 2 Cir. 1997), the Louisiana Second Circuit Court of Appeal explained that a substitute policy clearly requires some change in a policy. The materiality of the change, however, determines whether the change results in a "new" policy requiring the execution of a UM waiver rather than a substitute policy which does not. Lewis, 694 So.2d at 577. Deleting one named insured and changing the remaining named insured's name on the policy to her maiden name did not cause the issuance of a new policy. Id. at 578. In so concluding, the court explained that the remaining named insured, the vehicle covered, and the amount of bodily injury liability coverage remained constant. Id.

The substitution of one vehicle for another under an insurance policy constitutes a substitute policy. Huguet v. State Farm Mut. Auto. Ins. Co., 619 So.2d 186, 188 (La. Ct. App. 3 Cir.), writ

denied, 625 So.2d 1059 (La. 1993); Allen v. State Farm Mut. Auto. Ins. Co., 617 So.2d 1308, 1312 (La. Ct. App. 3 Cir. 1993); cf. Carter v. Patterson Ins. Co., 675 So.2d 736, 739 (La. Ct. App. 4 Cir.), writ denied, 679 So.2d 1384 (La. 1996)(substitution of vehicles did not create a new policy requiring execution of named driver exclusion clause). Increasing the number of insured vehicles under a policy or increasing the bodily injury liability limits of a policy, however, has been held to result in a new policy. See Daigle v. Allstate Ins. Co., 690 So.2d 261, 262 (La. Ct. App. 4 Cir.), writ denied, 693 So.2d 738 (La. 1997)(addition of car); Doyle v. Titan Indemnity Co., 629 So.2d 516, 520 (La. Ct. App. 5 Cir. 1993)(addition of another insured and/or new vehicle); Thibodeaux v. Champion Ins. Co., 614 So.2d 232, 233-34 (La. Ct. App. 3 Cir. 1993) (addition of car); Donaghey v. Cumis Ins. Society, 600 So.2d 829, 831 (La. Ct. App. 3 Cir. 1992)(addition of car); Ruiz v. Lewis, 579 So.2d 1203, 1207 (La. Ct. App. 4 Cir.), writ denied, 586 So.2d 562 (La. 1991) (increase in bodily injury liability limits); Gaar v. Sowards, 573 So.2d 499, 501 (La. Ct. App. 1 Cir.), writ denied, 569 So.2d 990 (La. 1990) (selection of higher limits of liability insurance); Guilbeau v. Shelter Mut. Ins. Co., 549 So.2d 1250, 1254 (La. Ct. App. 3 Cir. 1989)(bodily injury liability limits).

In the instant case, the policy change in question involves the addition of a driver to an automobile insurance policy subsequent to the rejection of UM coverage without a second UM

rejection after the additional driver was added. The effect of such a change with respect to UM coverage has been addressed by only two Louisiana circuits. Matheny argues that Dempsey, supra, is dispositive of the instant case. Glen Falls, however, asserts that a later Louisiana First Circuit decision, Wilkinson v. Louisiana Indemnity/Patterson Ins. Co., 682 So.2d 1296 (La. Ct. App. 1st Cir. 1996), writ denied, 695 So.2d 964 (La. 1997), and a case from the Louisiana Fourth Circuit, Daigle v. Allstate Ins. Co., supra, control and provide no relief to the Mathenys.

In Dempsey, Patrick Dempsey and Nancy Waller Dempsey sustained injuries as the result of an automobile accident. The Dempseys argued that their UM coverage equaled that of their bodily injury liability limits rather than the lower limits selected by Nancy when the policy was first issued because of changes made to their policy subsequent to the execution of the UM selection form.

The court of appeal held that the addition of Nicole Marino as an additional driver to the Dempsey policy subsequent to the execution of the UM form resulted in a new policy. Dempsey, 680 So.2d at 681. The court reasoned that the addition of a driver to the policy while the bodily injury liability limits remained the same increased the policy's coverage such that the policy was not a substitute policy. Id. Because no UM selection/rejection form was executed upon or subsequent to the issuance of this new policy, the UM coverage available to the Dempseys under the Allstate policy was equal to the limits of bodily injury liability coverage. Id.

7

Wilkinson, supra, addressed the effect of the addition of Frances Lofton Wilkinson as a named insured to the Patterson Insurance Company (Patterson) policy with respect to UM coverage. In May 1989, James Wilkinson obtained a policy of automobile liability insurance from Patterson. The bodily injury liability limits were $10,000/$20,000. An equal amount of UM coverage was provided. James and his wife, Becky Wilkinson, were listed as named insureds. The policy covered two vehicles--a Dodge truck and a Chevrolet Cavalier. Becky Wilkinson and the Cavalier were deleted from the policy as of July 17, 1989, as a result of James and Becky's separation.

After the Patterson policy was renewed on May 13, 1992, several changes were made. On June 9, 1992, a Mitsubishi truck was added as a second vehicle to the policy. On August 4, 1992, James signed a UM rejection form canceling the UM coverage on both vehicles in an effort to reduce the insurance premiums. Finally, on August 14, 1992, Frances Lofton Wilkinson, James Wilkinson's second wife, became a named insured on the policy.

On March 5, 1993, Frances was involved in an accident while driving the Mitsubishi truck. As a result of the accident, the Wilkinsons filed suit against Patterson, asserting that the Patterson policy provided UM coverage. Summary judgment was granted in favor of Patterson. On appeal, the court of appeal ordered the parties to provide supplemental briefs addressing the

8

impact of its earlier decision in <u>Dempsey</u>.[3]

The <u>Wilkinson</u> court held that the UM rejection form executed by James Wilkinson, Frances's husband, remained valid despite the subsequent addition of Frances as a named insured. <u>Wilkinson</u>, 682 So.2d at 1300. In reaching this conclusion, the court noted that although Frances did not become a named insured under the policy until August 1992, she and James were married in 1990. <u>Id</u>. <u>Dempsey</u> was therefore distinguishable as Frances Lofton Wilkinson, as James's spouse, had been covered by the policy since the time of its issuance according to the terms of the Patterson policy.[4] In distinguishing <u>Dempsey</u>, the court emphasized that the <u>Dempsey</u> opinion did not explain the exact relationship between Nicole Marino and the Dempseys, but noted that she obviously was not the spouse of Patrick Dempsey.

Glen Falls argues <u>Wilkinson</u> controls rather than <u>Dempsey</u> because Joseph, as a relative of the named insured, fits within the definition of an insured under the policy.[5] As such, Glen Falls

---

[3] The <u>Wilkinson</u> opinion refers to the <u>Dempsey</u> case as <u>Waller v. Automotive Casualty Insurance</u>, 95-2108 (La. App. 1st Cir. 6/28/96); 680 So.2d 675. <u>See</u> <u>Wilkinson</u>, 682 So.2d at 1299.

[4] An "insured" for purposes of UM liability was defined, in pertinent part, as "'the named insured and, while residents of the same household, his spouse and the relatives of either.'" <u>Wilkinson</u>, 682 So.2d at 1300.

[5] For purposes of UM coverage, the Glen Falls policy defines a "Covered Person" as follows:
(a) you;
(b) a **relative**;
(c) a person **occupying** an insured auto;

9

asserts that as in <u>Wilkinson</u> there was no increase in coverage when Joseph was added to the policy as a driver and no "new" policy issued.

We realize that the definition of a "Covered Person" for purposes of UM coverage under the Glen Falls policy in question includes relatives of the named insured; however, several factors persuade us that the court of appeal's rationale in <u>Dempsey</u> is more applicable to the facts of the instant case than that of <u>Wilkinson</u>.

In <u>Wilkinson</u>, Frances Lofton Wilkinson did not become a named insured under the Patterson policy until August 14, 1992, despite James and Frances having been married since 1990. The <u>Wilkinson</u> court found no increase in coverage occurred when Frances became a named insured as she had already been covered as James's spouse.

---

(d) a person **occupying** a trailer used with an **insured auto**;
(e) a person, for damages that person is entitled to recover, because of **bodily injury** to which Part 6 applies sustained by a person described in (a), (b), (c) or (d) above.

Glen Falls Policy, p. 43 (emphasis in original).

A "**relative**" is defined, in pertinent part, as "a resident of your household who is:

(A) a person related to you by blood, marriage, or adoption."

Glen Falls Policy, p. 7 (emphasis in original).

**"You"** refers to the person named as the "Named Insured" on the Coverage Data Page. It also means the spouse of the "Named Insured" if the spouse is a resident of the "Named Insured's" household.

Glen Falls Policy, p. 3 (emphasis added).

10

Whether or not an increase in coverage occurs is important because an increase may indicate that a material change in the original terms and/or risk covered under the policy had occurred.

We find it especially significant that the premium charged for the Wilkinsons' automobile insurance did not increase when Frances became a named insured in 1992. The lack of premium increase when considered in light of the court's statement that "the formal addition of Frances Wilkinson did not have the effect of increasing the policy's coverage," implies that no material change to the policy occurred when she was made a named insured. Wilkinson, 682 So.2d at 1300 (emphasis added). In other words, it appears that Patterson already had accounted for the risk presented by Frances as an insured driver under the policy upon her marriage to James in the premium it had charged prior to her becoming a named insured on the policy. Having "James and Frances Wilkinson" as named insureds rather than having "James Wilkinson" as a named insured and Frances as an insured by virtue of being James's spouse did not cause the amount of coverage or risk insured by the policy to change as indicated by the absence of a premium increase.

As the Wilkinson court explained, neither the relationship between Nicole Marino and the Dempseys nor whether Nicole would have qualified as an insured prior to June 27, 1991, by virtue of any relationship to the Dempseys was apparent from the Dempsey opinion. It is clear, however, that the risk insured by the policy changed upon her addition as a listed driver under the policy from

11

the perspective of Allstate as the insurer increased the premium paid by the Dempseys. See Dempsey, 680 So.2d at 681.

In the instant case, the addition of Joseph as a third driver to the Glen Falls policy obviously constituted a material change in the risk covered by the policy even if the policy technically provided him coverage prior to June 28, 1994, by virtue of its definition of a "Covered Person."  The increase in the premium charged the Mathenys by 38% is especially significant as it occurred only when Joseph, as a newly licensed driver, was added to the policy rather than when he became physically capable of driving.  This premium increase, in addition to policy language specifically explaining that "persons covered under your policy being newly licensed as operators of motor vehicles or recreational vehicles"  might result in a premium adjustment, provide evidence of the materiality of this change. Policy, p. 47.[6]

The Louisiana Fourth Circuit's opinion in Daigle, supra, does not persuade us that our reconciliation of the decisions of the Louisiana First Circuit should be otherwise.  In Daigle, the plaintiff, Deborah Daigle, sought to recover more UM benefits than originally selected by her father to whom the policy was issued.

---

[6] We further note that the policy indicates that "misrepresent[ation of] any material fact or circumstance [] relating to this policy" could result in the entire policy being void. Policy, p. 47.  Failure to notify Glen Falls of a relative of the named insured (as defined by the policy) becoming a licensed driver potentially could constitute such a material fact or circumstance.

12

Between the time of this election of lower limits and Deborah's accident, several cars were substituted to the policy and Deborah's brother, Edgar Daigle III, was added to the policy. In concluding the selection of lower UM limits made by Deborah's father remained valid despite the abovementioned changes to the policy, the court held, inter alia, that the addition of Edgar Daigle III as a driver to the policy did not constitute a material change to the policy. Daigle, 690 So.2d 261, 262-63. Although the court acknowledged the addition of an insured to a policy can be a material change to the policy, the court reasoned that Edgar was already an insured person under the policy, albeit as a passenger. Id. at 263. The court found the "alteration in his status, from an insured passenger to a driver, [was] not significant enough to convert the renewal policy into a new policy." Id.

In resolving an issue of state law in the absence of a definitive ruling of that state's highest court, our responsibility is to predict how that court, in this instance, the Louisiana Supreme Court, would rule. Rogers v. Corrosion Products, Inc., 42 F.3d 292 (5th Cir.), cert. denied, 515 U.S. 1160 (1995). In making this prediction, the decisions of the intermediate state courts provide guidance, but are not controlling. Id.; Green v. Walker, 910 F.2d 291, 294 (5th Cir. 1990). In light of our understanding of the Louisiana First Circuit's jurisprudence, the extremely strong Louisiana policy favoring UM coverage as reflected in Louisiana statutes and numerous decisions of the Louisiana Supreme

13

Court, and the absence of extensive analysis of this extremely important issue by the <u>Daigle</u> court, we find no compulsion to adopt the approach set forth by the <u>Daigle</u> decision and advocated by Glen Falls.[7] Although Edgar Daigle III may have been covered by the UM insurance by virtue of his status as a passenger prior to being added as a driver under the policy, the risk of injury caused by an uninsured or underinsured driver to a passenger is not necessarily the same as that faced by an inexperienced new driver.[8]

We conclude that the addition of Joseph Matheny as a licensed driver to the Glen Falls policy in question resulted in a material change in the risk insured by the policy causing a 38% increase in the premium charged; therefore, we hold that a new policy rather than a substitute policy was issued. As no UM rejection or selection of lower limits was executed subsequent to this event, UM coverage was provided in an amount equal to the limits of the bodily injury liability coverage. Because we conclude that the

---

[7] Although not specifically on point, we find language in additional cases from other circuits of the Louisiana courts of appeal supportive of our conclusion. See <u>Lovoi v. Ladreyt</u>, 655 So.2d 387, 389 (La. Ct. App. 5 Cir.), <u>writ denied</u>, 656 So.2d 1031 (La. 1995)(" The jurisprudential trend requires a new waiver when the insured has requested a change in either the insured person, vehicle, risks, or coverage limits."); <u>Doyle v. Titan Indemnity Co.</u>, 629 So.2d 516, 520 (La. Ct. App. 5 Cir. 1993)(" The addition of another insured and/or a new vehicle cannot be made to a policy and still have the policy considered a renewal or substitute one."); <u>Tully v. Liberty Mutual Fire Ins.</u>, 516 So.2d 435, 439 (La. Ct. App. 1 Cir. 1987)(addition of another insured and that new insured's vehicle cannot be a renewal or substitute policy).

[8] Further, the <u>Daigle</u> opinion also does not indicate whether the addition of Edgar Daigle III caused a premium increase.

14

Glen Falls policy provided UM coverage to the Mathenys, the question of whether the district court correctly denied Matheny's motion to submit newly discovered evidence, to re-open the case, and for a new trial is moot.

For the foregoing reasons, the order of the district court granting summary judgment in favor of Glen Falls is REVERSED and summary judgment is RENDERED in favor of Matheny declaring that the Glen Falls policy provided UM coverage to the Mathenys in an amount equal to the limits of the bodily injury liability coverage.