# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

October 17, 2011

No. 10-10835

Lyle W. Cayce
Clerk

DEWEY WEAVER,

Plaintiff-Appellee

v.

TEXAS CAPITAL BANK N.A.,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before SMITH, BENAVIDES, and HAYNES, Circuit Judges.

PER CURIAM:

This is an appeal from a grant of a summary judgment in favor of Plaintiff-Appellee Dewey Weaver ("Weaver"), and a denial of a cross-motion for summary judgment filed by Defendant-Appellant Texas Capital Bank N.A. ("Texas Capital"). We REVERSE and RENDER judgment in favor of Defendant-Appellant Texas Capital.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-Appellee Weaver was a member of SL Management, a Louisiana company that bought and sold real estate in Texas. Between October 2004 and September 2006, SL Management obtained loans from Texas Capital in the form of four promissory notes totaling $978,719. The notes were secured by eleven

No. 10-10835

tracts of land in Tarrant County, Texas, and Weaver and his business partner, Walter Dootson, executed personal guaranties of payment on each of the promissory notes. The guaranties unconditionally committed Weaver and Dootson to satisfy SL Management's debt on the promissory notes.

On January 16, 2008, SL Management filed a Chapter 11 bankruptcy petition in the Northern District of Texas. Texas Capital appeared as a creditor in SL Management's bankruptcy suit and filed an unobjected-to proof of claim for $756,000. On March 6, 2008, SL Management filed its plan of reorganization. This plan classified Texas Capital as a Class 10 creditor. Section 5.11 of SL Management's bankruptcy plan provided:

> The Debtor shall sell [Texas Capital's collateral properties] to The Champions Group, or its designee [ ], pursuant to that certain Motion to Sell [ ] filed with the Court on March 6, 2008. It is anticipated that the sale of these properties will occur prior to the Effective Date and that [Texas Capital] will have no remaining claim in Debtor's estate. In the event the Court does not approve the Sale Motion or if any of [Texas Capital's collateral properties] are not purchased by Champions as required by Sale Motion, the Debtor shall upon the Effective Date surrender all Debtor's interest [in Texas Capital's collateral properties] to the Class 10 creditor under 11 U.S.C. [§] 1129(b)(2)(iii) in full satisfaction of the Class 10 claims. To the extent the Court after notice and hearing determines that the cumulative value of the properties to be surrendered to [Texas Capital] under this Plan is less than the cumulative amount of the Allowed Texas Secured Claim, any deficiency shall be treated as a Class 12 claim and paid in accordance with the Class 12 treatment. Class 10 shall not have a Class 11 Claim. Class 10 is impaired under this Plan.

Under the bankruptcy plan, Class 12 claimants were to be paid by Weaver in an amount fully satisfying their claims, up to $500,000. The bankruptcy plan also contained a provision stating that the plan would be the "exclusive remedy for payment of any claims or debt so long as the [p]lan is not in default," which

No. 10-10835

Weaver claims enjoined Texas Capital from separately suing to collect on the guaranty agreements.[1]

Thus, as to Texas Capital, SL Management's bankruptcy plan provided, first, that SL Management would attempt to sell the properties in Tarrant County with which Texas Capital had secured the promissory notes, and second, if that sale did not occur, that all of the secured properties would be surrendered to Texas Capital in "full satisfaction of the Class 10 claims" by the Effective Date of the plan. Should the bankruptcy court determine, however, that "the cumulative value of the properties to be surrendered . . . is less than the cumulative amount of the [claim]," then any deficiency would be treated as a Class 12 claim and would be paid by Weaver "in the amount necessary for full and complete satisfaction" of the claim.

On September 2, 2008, the bankruptcy court confirmed SL Management's bankruptcy plan. SL Management did not sell the Tarrant County properties, and on October 13, 2008—the Effective Date of the plan—the properties were surrendered to Texas Capital. Neither party requested a valuation of the collateral. On December 1, 2008, Texas Capital foreclosed on the properties, leaving a deficiency of $431,659.34, plus fees, expenses, and interest. The bankruptcy action was closed on December 16, 2008.

Previously, on April 8, 2008—during the pendency of SL Management's bankruptcy case—Texas Capital filed an action in Texas state court to enforce

---

[1] Section 10.3 of the bankruptcy plan provides:

Notwithstanding anything contained herein to the contrary, neither Debtor, reorganizing Debtor, guarantors of the debtor, or any people liable on a debt with the Debtor shall be discharged and released from any liability for claims and debts under this Plan, however, the exclusive remedy for payment of any claims or debt so long as the Plan is not in default shall be the Plan.

Notably, this provision does not mention Weaver, nor does it contain any language purporting to control the filing of claims on the separate guaranty agreements.

3

the guaranty agreements between it and Weaver. Weaver was properly served, but he did not answer or otherwise respond, and on December 15, 2008, the Texas state court entered a default judgment against Weaver for $766,645.79, plus fees, costs, and interest. In February 2009, Texas Capital initiated collection proceedings against Weaver in Louisiana state court and registered the Texas judgment, subject to a $334,986.45 credit.

In response to the collection action, on February 27, 2009, Weaver filed the instant action in the Northern District of Texas, seeking a declaration that SL Management's debt to Texas Capital was fully satisfied by the surrender of collateral, and therefore, that any liability owed on the guaranties was also satisfied at the time of the Texas state judgment, or in the alternative, that the Texas state default judgment was fully satisfied by the bankruptcy plan. Under both theories, Weaver's case is premised on an argument that since SL Management's underlying debt to Texas Capital is paid, no payment related to the guaranties need be made to Texas Capital. The parties filed cross-motions for summary judgment, and on July 23, 2009, the action was referred to the bankruptcy court for proposed findings of fact and conclusions of law.

The district court largely adopted the bankruptcy court's proposed findings, and it denied Texas Capital's motion for summary judgment and granted in part Weaver's motion for summary judgment. Specifically, the district court held: (1) that the Texas state default judgment was entitled to preclusive effect; (2) that SL Management's surrender of the collateral properties was presumed to be in full satisfaction of its debt to Texas Capital, and that the Texas default judgment was also satisfied, but that Texas Capital could move to reopen the bankruptcy case to seek a deficiency valuation hearing; (3) that the bankruptcy plan enjoined Texas Capital from pursuing a collection action against Weaver without establishing a default under the bankruptcy plan; and

No. 10-10835

(4) that the Rooker-Feldman doctrine did not deprive the court of jurisdiction.[2] On August 6, 2010, the district court entered judgment, declaring that "the default judgment obtained by [Texas Capital] against [Weaver] in Texas state court has been fully satisfied by the plan of reorganization of SL Management." On August 19, 2010, Texas Capital filed a notice of appeal.

## II. Standard of Review

We review a district court's grant of summary judgment de novo. *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010); Fed. R. Civ. P. 56(a). We also review a district court's rulings on questions of law, such as res judicata and subject matter jurisdiction, de novo. *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).

## III. Analysis

### A. Rooker-Feldman Doctrine

Defendant-Appellant Texas Capital argues that the Rooker-Feldman doctrine deprives this Court of subject matter jurisdiction. We address this issue first because it touches upon the jurisdiction of the Court, and we conclude that the Rooker-Feldman doctrine does not apply.

Under the Rooker-Feldman doctrine, "federal district courts lack jurisdiction to entertain collateral attacks on state court judgments." *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994). A state court judgment is attacked for purposes of Rooker-Feldman "when the [federal] claims are 'inextricably intertwined' with a challenged state court judgment," *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 350 (5th Cir. 2003), or where

---

[2] The district court only parted with the bankruptcy court's recommendation on the issue of res judicata. The bankruptcy court recommended that the Texas state default judgment not be given any preclusive effect because, according to the bankruptcy court, that action was filed in knowing violation of its order that "no deficiency claim" could be filed "absent its establishment at a valuation hearing in bankruptcy court."

the losing party in a state court action seeks "what in substance would be appellate review of the state judgment." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994). The doctrine, however, does not preclude federal jurisdiction over an "independent claim," even "one that denies a legal conclusion that a state court has reached." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005).

In the current suit, Weaver seeks a declaration that SL Management's surrender of collateral under the bankruptcy plan satisfied any debt owed on the guaranties, and therefore, either (1) that no debt was actually owed at the time of the Texas judgment, or (2) that the Texas judgment itself has by extension also been fully satisfied. This is a close issue, but given that granting the requested relief does not actually require appellate-type review or invalidation of the Texas judgment, and also considering the narrow scope of the Rooker-Feldman doctrine, we conclude that the doctrine does not deprive us of jurisdiction. *See Skinner v. Switzer*, 131 S. Ct. 1289, 1297 (2011) (emphasizing narrow scope of Rooker-Feldman doctrine); *Exxon Mobil*, 544 U.S. at 291–93 (same). Indeed, as we have noted in other cases, the Rooker-Feldman doctrine generally applies only where a plaintiff seeks relief that directly attacks the validity of an existing state court judgment. *See, e.g.*, *In re Bayhi*, 528 F.3d 393, 402 (5th Cir. 2008) (holding that state judgment on a student loan obligation could not be entirely vacated); *In re Reitner*, 152 F.3d 341, 343–44 (5th Cir. 1998) (finding a violation of Rooker-Feldman doctrine where a district court decision invalidated a state judgment revoking homestead rights); *United States v. Shepard*, 23 F.3d 923, 924–25 (5th Cir. 1994) (finding violation of Rooker-Feldman doctrine where district court invalidated state judgment confirming validity of foreclosure sale).

In reality, Texas Capital's arguments against federal jurisdiction are more closely related to res judicata. Indeed, Texas Capital's central argument is that

the issue of whether the surrender of the collateral properties under the bankruptcy plan also satisfied the debt owed by Weaver on the guaranties is a defense to payment, which Weaver should have raised in the state action. This issue is not jurisdictional, but instead, is more appropriately resolved through an application of res judicata. *See, e.g., Exxon Mobil*, 544 U.S. at 293 (explaining that if a federal plaintiff presents some independent claim, then the law of preclusion determines the effect of earlier judgments). Thus, we conclude that the Rooker-Feldman doctrine is not implicated and we proceed to consider the res judicata effect of the Texas judgment.

### B. Res Judicata

As previously noted, Texas Capital's primary argument for reversing the district court's judgment is that Weaver's current claim for declaratory relief is barred by res judicata. Specifically, Texas Capital argues that the current action is actually a defense to payment that should have been raised in the Texas state action and that it may not now be asserted as a separate claim for relief. The district court ruled that the Texas default judgment must be given preclusive effect, but it also ruled that the judgment was fully satisfied by SL Management's bankruptcy plan. We now conclude that Weaver's claim for declaratory judgment is barred by res judicata under Texas law.

As a preliminary matter, we will address Plaintiff-Appellee Weaver's argument that the Texas state judgment is void because it was obtained in violation of a bankruptcy stay, and it is, therefore not entitled to any preclusive effect. According to Weaver, section 10.3 of the bankruptcy plan enjoined collection efforts against guarantors so long as the bankruptcy plan was not in default. First, it is not clear from the language of the bankruptcy plan that collection efforts against third-parties were actually enjoined. However, even assuming the bankruptcy plan has this effect, actions taken in violation of an injunction are not void. *Suntex Dairy v. Bergland*, 591 F.2d 1063, 1068 (5th Cir.

No. 10-10835

1979) ("An injunction decree operates in personam, and an act done in violation of an injunction is not a nullity.").[3] Moreover, Weaver waived his argument that the Texas judgment is void, because he failed to cross-appeal the district court's ruling on this issue. Although an appellee may argue any ground available to support affirmance of a judgment, he may not argue for a ruling that would expand his legal rights. *Castellano v. Fragozo*, 352 F.3d 939, 960 (5th Cir. 2003) (en banc) (finding that issue not raised on a cross-appeal could still be presented where it merely argued an alternative ground to affirm and did not request expansion of rights under the judgment). The district court expressly recognized the validity of the judgment; should it now be found void, Weaver would regain the right to dispute his obligation to make payment on the judgment or even on the underlying guaranties.

Given that the Texas state default judgment is not void, we will now consider its preclusive effect. In determining the preclusive effect of an earlier state court judgment, federal courts apply the preclusion law of the state that rendered the judgment. *Marrese v. Amer. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 381 (1985); *Conn. Bank of Comm. v. Congo*, 309 F.3d 240, 248 (5th Cir.

---

[3] Further, as a guarantor, Weaver is not entitled to the protections of a debtor's automatic stay. 11 U.S.C. § 362(a). Automatic-stay provisions generally only protect the debtor and very rarely extend to protect third parties. *See Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001). Here, Texas Capital sought a judgment against Weaver, not against any of the assets of SL Management, and there is no indication that a judgment against Weaver is functionally one against SL Management. *See Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (stating bankruptcy stay may protect third party defendant where "judgment against the third-party defendant will in effect be a judgment or finding against the debtor" (quotation marks omitted)); *In re HSM Kennewick, L.P.*, 347 B.R. 569, 571 (Bankr. N.D. Tex. 2006) ("Section 362(a)(3) implements a stay of any action, whether against the debtor or third parties, that seeks to obtain or exercise control over the property of the debtor.").

2002); 28 U.S.C. § 1738. Because the judgment at issue is from a Texas state court, Texas preclusion law applies.[4]

Under Texas law, default judgments have preclusive effect for purposes of claim preclusion. *Houtex Ready Mix Concrete & Materials v. Eagle Const. & Envtl. Servs., L.P.*, 226 S.W.3d 514, 519 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *see also Moyer v. Mathas*, 458 F.2d 431, 434 (5th Cir. 1972) (noting that a prior "judgment is no less res judicata because it was obtained by default, absent any proof of fraud, collusion, or lack of jurisdiction.").[5] Claim preclusion, or res judicata, bars assertion of a claim in a subsequent case when: (1) there is a prior final judgment on the merits by a court of competent jurisdiction; (2) the parties in the second action are the same or in privity with those in the first action; and (3) the second action is based on the same claims as were raised or could have been raised in the first action. *Igal v. Brightstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 86 (Tex. 2008). "This approach mandates that a defendant bring as a counterclaim any claim arising out of the transaction or occurrence that is the subject matter of the opposing party's suit." *State & Cnty. Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001); *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 206–07 (Tex. 1999) (stating that res judicata precludes the assertion of all "claims or defenses that, through diligence, should

---

[4] In determining state law, federal courts look to final decisions of the state's highest court. *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992). When there is no ruling by the state's highest court, the federal court must determine what the highest court of the state would decide. *Id.* While decisions of intermediate state appellate courts provide persuasive guidance, they are not controlling. *Matheny v. Glen Falls Ins. Co.*, 152 F.3d 348, 354 (5th Cir.1998).

[5] Additionally, to the extent that the bankruptcy court's confirmation of SL Management's bankruptcy plan and the Texas state decision are inconsistent with each other, the "last-in-time" rule dictates that where "there are two prior inconsistent judgments, only the last judgment has estoppel effect." *Reimer v. Smith*, 663 F.2d 1316, 1327 (5th Cir. 1981); *Browning v. Navarro*, 887 F.2d 553, 563 (5th Cir. 1989) (stating "last-in-time" rule is law in Texas); *see also* Restatement (Second) of Judgments § 15.

have been litigated in the prior suit but were not"); *In re Erlewine*, 349 F.3d 205, 210 n.5 (5th Cir. 2003) ("In the Texas courts, the doctrine of res judicata . . . bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in the prior suit." (quotation omitted)). Texas courts have interpreted this rule as only barring prior defendants from asserting claims in a later action that were compulsory counterclaims in the prior suit. *Ingersoll-Rand*, 997 S.W.2d at 207 (stating any claims that would be compulsory counter-claims must be brought by defendant or be barred due to res judicata); *Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 216 (Tex. App.—El Paso 2010,  pet. denied) (same); *Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487, 496 (Tex. App.—Texarkana 2002, pet. denied) (same).[6]

Given that it is not disputed that there is a prior final judgment issued by a court of competent jurisdiction and that the parties are identical in both actions, the only remaining issue in question is whether this action is based on the same claims that were raised in the first.[7]  In determining whether two actions are sufficiently related for purposes of res judicata and the compulsory counterclaim rule, Texas follows a transactional approach. *Ingersoll-Rand*, 997 S.W.2d at 206–07 (Tex. 1999); *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630–31 (Tex. 1992) (stating definition of transaction in compulsory counterclaim

---

[6]  Under Texas Rule of Civil Procedure 97(a), a compulsory counterclaim is "any claim within the jurisdiction of the court, not the subject of a pending action, which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."  Tex. R. Civ. P. 97(a).

[7]  Additionally, none of the other requirements in the compulsory counterclaim rule are at issue.  It is not disputed that the Texas state court had jurisdiction over the current claim for declaratory relief, that this claim was not the subject of a separate pending action, and that assertion of this claim in state court did not require the presence of unavailable third parties. *See* Tex. R. Civ. P. 97(a).

and res judicata rules are "substantially similar"). To decide whether the two lawsuits arose out of the same transaction or occurrence, several factors are considered together, including "their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes." *Getty Oil Co. v. Ins. Co. of N.A.*, 845 S.W.2d 794, 799 (Tex. 1992) (quotation marks omitted) (citing Restatement (Second) of Judgments § 24 cmt.b); *Crowder v. Amer. Eagle Airlines, Inc.*, 118 F. App'x 833, 838 (5th Cir. 2004) (per curiam) (applying Texas law). "Where there is a legal relationship, such as [ ] a lease or contract, all claims arising from that relationship will arise from the same subject matter and be subject to res judicata." *Sanders v. Blockbuster, Inc.*, 127 S.W.3d 382, 386 (Tex. App.—Beaumont 2004, pet. denied); *see also Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1342–43 (5th Cir. 1996) (finding previous defendant cannot assert new claims related to contract that was subject of previous suit).[8]

Here, not only is the current declaratory judgment action related to the Texas action, it is brought on the same exact guaranties. Additionally, the events leading to the Texas lawsuit—the signing of the guaranties and SL Management's bankruptcy—provide the same factual foundation for the instant claim. Rather than disputing his obligation to make payment on the guaranties in the Texas action, Weaver filed this lawsuit seeking a declaration that no payment needed to be made because of the operation of the bankruptcy plan. In reality, Weaver's claim for declaratory relief is merely a defense, converted into a cause of action, that could and should have been raised in that earlier Texas

---

[8] *See also South Plains Switching, Ltd. Co. v. BNSF Ry.*, 255 S.W.3d 690, 699–700 (Tex. App.—Amarillo 2008, pet. denied) (holding claims brought on same contract arise from same transaction); *Musgrave v. Owen*, 67 S.W.3d 513, 520 (Tex. App.—Texarkana 2002, no pet. h.) (finding all claims arising from same covenant must be asserted in original action); *Jones v. First Bank of Anson*, 846 S.W.2d 107, 108–10 (Tex. App.—Eastland 1992, no writ) (finding previous defendant is barred from bringing claims related to collection on a note when bank previously sued for judgment on same note).

No. 10-10835

action. *See* Tex. R. Civ. P. 94 (listing "discharge in bankruptcy," "payment," and "release" as affirmative defenses). Because this action and the Texas action arose from the same transaction, the current claim needed to be raised as a defense in that earlier suit and may not now be brought as a separate claim for relief. *See, e.g.*, *Amer. Int'l Indus., Inc. v. Scott*, --- S.W.3d ----, 2011 WL 1631764, at *3–6 (Tex. App.—Houston [1st Dist] Apr. 28, 2011) (finding that a previous defendant could not file suit seeking a declaratory judgment asserting a defense to payment of a settlement agreement because the agreement was the subject of an earlier suit); *Houtex*, 226 S.W.3d at 520–21 (applying res judicata to bar a plaintiff from filing a suit for declaratory judgment on the application of a contract that could have been asserted as a claim or defense in an earlier action about that contract).[9] Indeed, this wasteful lawsuit embodies the importance of many of the policy rationales for res judicata, which include, among other things, "the need to . . . prevent vexatious litigation . . . and [to] promote judicial economy." *Barr*, 837 S.W.2d at 629. Accordingly, we conclude that res judicata bars the assertion of Plaintiff-Appellee Weaver's claim for declaratory judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court REVERSES the judgment of the district court and RENDERS judgment in favor of Defendant-Appellant Texas Capital.

---

[9] In its analysis, the district court found that the Texas judgment was entitled to preclusive effect, but still found that the current relief could be granted. The district court's analysis on the effect of the state judgment seems almost backwards—instead of first determining whether the state judgment completely precluded Weaver's current claim, the district court reached the merits and found that the suit was not precluded because its own ruling did not contradict the state judgment.