694 So.2d 574 (1997)
Rodney LEWIS and Rose Averitte Lewis, Plaintiffs-appellants,
v.
Roosevelt V. LENARD and Allstate Insurance Company and Shelter Insurance Company, Defendants-appellees.
No. 29,529-CA.
Court of Appeal of Louisiana, Second Circuit.
May 7, 1997.
*575 Madeline M. Slaughter, Monroe, for Plaintiffs-Appellants.
Hudson, Potts & Bernstein by Charles W. Herold, III, Monroe, for Defendants-Appellees.
Before MARVIN, C.J., and GASKINS and CARAWAY, JJ.
CARAWAY, Judge.
In our review of this summary judgment, we are asked to decide whether an insurer should have obtained a new, valid rejection of uninsured motorist coverage where the insured, following her divorce, had the policy reissued in her maiden name alone, without her former husband, but with the same coverage on the same vehicle. The trial court granted the insurer, Shelter Mutual Insurance Company, summary judgment finding that the policy issued to the insured, Rose Averitte Lewis, was a "renewal" policy and that her original waiver of UM coverage had survived the renewal. We affirm.

Facts
On June 13, 1990, Rose Averitte Lewis and Rodney Lewis, husband and wife, applied for automobile insurance with Shelter Mutual Insurance Company. The policy was issued in the names of Mr. and Mrs. Lewis. Rose executed a valid written waiver of UM coverage. The policy originally covered only a 1984 Ford Tempo, which was community property.
Two years later, on June 30, 1992, Rose and Rodney were divorced. Rose began using her maiden name again, Rose Mary Averitte. As part of the property settlement, Rose obtained the 1984 Ford Tempo. Subsequent to the divorce, Rose requested that the coverage for the 1984 Ford be placed solely in her maiden name. She did not request any additional or different coverage. The original 10/20/10 coverage continued. Shelter reissued Rose a policy with the changes requested effective on the renewal date of the old policy with a different policy number.[1] No new UM waiver was executed. Rodney retained the former policy number to insure a van which apparently may also have been previously added to the policy.
Rose was in an accident while driving the Ford Tempo on December 22, 1993, over a year after the policy changes mentioned above were implemented. The policy at the time of the accident had been renewed quarterly several times. Rodney, whom she remarried nine days after the accident, was a guest passenger in the vehicle. They filed suit against the driver of the other automobile, *576 his insurer and Rose's insurer, Shelter, for UM coverage. Plaintiffs admit that Rose Averitte Lewis validly rejected UM coverage when the original policy of insurance was issued. They contend, however, that subsequent to the divorce, Shelter issued Rose a new policy of insurance requiring that she execute a new waiver of UM coverage.
The trial court, after initially rejecting the motion, granted Shelter's motion for summary judgment on grounds that the policy issued to Rose after her divorce was a "renewal" of the initial policy in which a valid UM rejection was executed. According to La. R.S. 22:1406 D(1)(a)(i), UM coverage
... need not be provided in or supplemental to a renewal, reinstatement, or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates. (Emphasis added).
Plaintiffs appeal, claiming that the trial court erred in finding that the policy in effect on the date of the accident was a renewal of the policy issued to Rose and Rodney in 1990, and that the valid UM rejection signed by Rose for that policy was in effect and valid in her 1993 policy.

Discussion
Appellate courts review the grant of a summary judgment de novo under the same criteria governing the trial court's consideration of whether a summary judgment is appropriate. Thomas v. Goodson, 26,356 (La.App. 2d Cir.1994), 647 So.2d 1192, 1193. Under La. C.C.P. art. 966, a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show there is no genuine issue of material fact and mover is entitled to judgment as a matter of law. Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992). A dispute as to the issue of whether, as a matter of law, an insurance policy provides or precludes coverage to a party can be properly resolved within the framework of a motion for summary judgment. Thomas v. Goodson, supra; Garcia v. Certified Lloyds Insurance Co., 598 So.2d 1278 (La.App. 4th Cir.1992), writ denied, 604 So.2d 969 (La.1992).
Initially, we note that La. R.S. 22:1406 D(1)(a)(i) additionally provides that "any insured named in the policy" may reject the UM coverage. Therefore, the waiver of the UM coverage by Rose was effective regarding the initial issuance of the policy in the names of both spouses.
La. R.S. 22:1406, as quoted above, provides, in part, that a prior rejection of UM coverage continues in a "renewal, reinstatement or substitute policy." These three policy settings were discussed by the Third Circuit in Bryant v. Viking Insurance Company of Wisconsin, 579 So.2d 1241 (La.App. 3d Cir.1991):
La. R.S. 22:636.1(A)(5) defines a "renewal" policy as one issued and delivered to replace "at the end of the policy period" a policy previously issued and delivered by the same insurer. A renewal can therefore occur only at the end of the policy period it renews; it is not a renewal if the second issuance occurs after the end of the first policy period. A renewal contemplates uninterrupted coverage.
* * * * * *
The distinction between a substitute and reinstated policy is given in 18 Couch on Insurance 2d Secs. 69.1-69.3, Revival and Reinstatement. If there is coverage and an agreement is made for a different coverage, there is a substitution of policies. To reinstate an insurance policy mean to restore the insured to all the benefits accruing under the policy contract. For there to be a reinstatement, it is necessary that there be an interval during which the insured no longer is covered by insurance.
Id. at 1242 and 1243.
With these three events allowing for the original UM coverage to continue, various disputes have arisen in the jurisprudence regarding what types of changes, if any, may occur to the original policy upon renewal, instatement or substitution.[2] Even the definition *577 for "renewal" under La. R.S. 22:636.1(A)(5),[3] which is the only one of the three events statutorily defined, speaks in terms of a replacement policy at the end of the prior policy period without stating that no change can occur to such replacement policy. For example, if the insured drops from his policy the comprehensive and collision coverage on the vehicle at the end of the policy period renewing the critical limits for bodily injury liability upon which UM coverage under the statutory scheme turns, the replacement policy is not clearly precluded as a renewal under the statutory definition. Likewise, while we agree with Bryant that a reinstatement policy occurs after an interval during which the insured no longer was covered by insurance, will any change occurring under the terms of a reinstated policy, regardless of its bearing upon the initial selection of the limits of bodily injury liability and UM coverage, preclude the new policy from being a "reinstated policy" as that term is used in the statute?
Regardless of whether any change in policy terms may occur at the time of renewal or reinstatement, the event of a substitute policy clearly must encompass some change. In this regard, we do not view "substitute policy" to mean only that some type of actual substitution of vehicles or insureds must occur. The deletion of Mr. Lewis from the policy in this instance was a change in the policy which can be said to have resulted in a substitute policy. The determinant question is whether the change in the policy is material to the initial selection or waiver of UM coverage that would require the execution of a new selection or waiver.
In this instance, a policy bearing Policy No. 17-1-2757471-1 solely in the name of Rose Mary Averitte was issued subsequent to the divorce and became effective on the renewal date after her divorce, and subsequent renewals occurred at the end of each quarterly policy period, keeping the policy in effect through the date of the accident. Were there no changes in the policy, clearly no new waiver would be required under La. R.S. 22:1406. There was a change, however, in the policy number, and Rodney Lewis was deleted as a named insured.[4] Rose also had the policy put in her maiden name. Plaintiff argues that the deletion of Rodney Lewis from the policy, the change in the insured's name and the issuance of a new policy number constituted a material change in the policy, precluding the existence of either a renewal or substitute policy, thus requiring a new rejection of UM coverage.
First, we conclude that a change in policy numbers does not necessarily indicate a new policy has been issued rather than a renewal or substitute policy. In Maatki v. Moore, 760 F.Supp. 1180 (E.D.La.1991), on rehearing, the court held that a subsequent motor vehicle policy was a renewal policy rather than new policy and, therefore, the rejection of greater UM coverage that was valid and operative as to initial policy continued to be valid and operative as to the subsequent policy, even though the initial and subsequent policies had different policy numbers. The federal district court reached the conclusion that a change in policy numbers is of no legal significance citing Schwoch v. Sutor, 559 So.2d 552 (La.App. 2d Cir.1990), wherein a panel from this court observed that it was unnecessary to list a policy number on the *578 UM rejection form, "since policy numbers could change upon renewal or substitution."
Nor does the change of one's name on the policy amount to a material change since, obviously, in this instance, the named insured, who was also the party who executed the waiver, is still the same person. This is to say, there is no change in the named insured where the insured merely reverts to using her maiden name.
Finally, regarding the removal of an insured from a jointly titled policy and the incidental change in the nature of the ownership of the insured vehicle, we have found no Louisiana cases where this precise question was raised. An analogous situation occurred under Florida law, which is similar to Louisiana law regarding the rejection of UM coverage. In Kerr v. State Farm Mutual Automobile Insurance Co., 434 So.2d 970 (Fla. App. 5 Dist.1983), the court held that replacing the husband's name as the "named insured" with that of the wife who was an "additional insured" on an existing policy continued to provide the same coverage on the same vehicle after the husband's death and did not constitute a variation of the terms of the policy material enough to require the insurer to again offer UM coverage. In Kerr, as in this case, the ownership of the vehicle changed from community to sole ownership by the wife. Louisiana courts have also utilized the "material change" test employed in Kerr. See, e.g., Troha v. State Farm Ins. Co., supra.
Despite the change in the number of insureds from two persons to one, the first and last policies now in dispute insofar as they apply to Rose remain identical. There was a constancy of the insured who executed the waiver, the vehicle, and the stated "bodily injury liability" coverage which is the key to La. R.S. 22:1406 D(1)(a)(i). Further, Rose was not required by the insurer to fill out or sign a new application for coverage. Applying the test of materiality, we conclude under the particular facts of this case that amending a policy to delete coverage of an insured on the policy, where an original applicant makes the change, does not amount to a material change in the policy such that the reissued policy constitutes the issuance of a new policy. Any need to choose the technical label for the reissuance in this case, as either a renewal or substitute policy, is not present given the immateriality of the circumstances of this case. Rose Mary Averitte elected to reject UM coverage in her original application on her own behalf and on behalf of Rodney Lewis. She further admitted that it was her intention merely to remove her former husband's name from the policy, and not to make any changes to the policy coverage. Thus, we find that the original policy was merely amended and reissued, effective on the renewal date of September 13, 1992.

Conclusion
Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant.
AFFIRMED.
NOTES
[1] While appellant argues that the policy issued to Rose in her own name did not occur at the end of a policy period and was therefore not a renewal, our review of the entire record indicates that the changes in the policy in question were effective as of September 13, 1992, the very first renewal date subsequent to her divorce. Rose continued to renew her policy on the quarterly renewal dates through December 13, 1993.
[2] See Wilkinson v. Louisiana Indemnity/Patterson Insurance, 96-0447 (La.App. 1st Cir. 11/8/96), 682 So.2d 1296; Dempsey v. Automotive Casualty Insurance, 95-2108 (La.App. 1st Cir. 6/28/96), 680 So.2d 675; Lovoi v. Ladreyt, 655 So.2d 387 (La.App. 5th Cir.1995), writ denied 656 So.2d 1031 (La.1995); Allen v. State Farm Mutual Automobile Insurance Company, 617 So.2d 1308, 1312 (La.App. 3d Cir.1993); Troha v. State Farm Ins. Co., 606 So.2d 89 (La.App. 3d Cir.1992); Mouton v. Guillory, 494 So.2d 1374 (La.App. 3d Cir.1986); Moore v. Young, 490 So.2d 519 (La. App. 4th Cir.1986); Myers v. Thibeaux, 365 So.2d 266 (La.App. 3d Cir.1978).
[3] La. R.S. 22:636.1(A)(5) provides, in pertinent part:

"Renewal" or "to renew" means the issuance and delivery by an insurer of a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term.
[4] Likewise, though the record is not entirely clear, a van which was apparently covered under the policy at the time of the parties' divorce was also deleted from the policy. However, for the same reasons expressed herein regarding the deletion of Rodney Lewis from the policy coverage, any deletion of the van does not change our conclusion.