886 So.2d 448 (2004)
Rhonda Dyess, Wife of/and Cecil D. DYESS
v.
AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY.
No. 2003 CA 1971.
Court of Appeal of Louisiana, First Circuit.
June 25, 2004.
Writ Denied October 29, 2004.
*449 Clifford E. Cardone, New Orleans, Counsel for Plaintiffs/Appellees Rhonda Dyess, wife of/and Cecil D. Dyess.
Arthur H. Andrews, Baton Rouge, Counsel for Defendant/Appellant American National Property and Casualty Company.
Before: WHIPPLE, KUHN, and McDONALD, JJ.
KUHN, J.
In this appeal, we consider whether an uninsured/underinsured motorist bodily injury ("UM") coverage form, which is in the format prescribed by the Louisiana Commissioner of Insurance pursuant to Louisiana Revised Statutes 22:1406 D(1)(a)(ii) and is signed by the insured, validly rejects UM coverage where the selection rejecting such coverage is not marked with the insured's initials but is marked with *450 only an "X." Our learned brother, trial judge Robert H. Morrison, III, granted the insured's motion for summary judgment, finding the purported rejection to be insufficient to reject UM coverage. We affirm.

I. PROCEDURAL AND FACTUAL BACKGROUND
Plaintiffs, Rhonda and Cecil Dyess, filed suit against their alleged UM insurer, American National Property and Casualty Co. ("ANPAC"), seeking to recover damages for Ms. Dyess' bodily injuries. Ms. Dyess alleged that she sustained serious injuries as the result of a motor vehicle accident that occurred on March 7, 2001.[1] She asserted that while operating her 2000 Plymouth Voyager, she was struck by a vehicle that crossed the centerline of the highway upon which she was traveling. The vehicle in question was operated by Brett Starns, owned by Melvin T. Allday, and insured by State Farm Mutual Automobile Insurance ("State Farm"). State Farm has paid the Dyesses the limits of its liability policy in settlement of their claims against Allday, and the record further establishes that Ms. Dyess' injuries exceeded the amount of the policy limits. ANPAC's answer also concedes that Starns was an underinsured motorist. ANPAC maintained, however, that the Dyesses' claims should be dismissed because Ms. Dyess had rejected UM coverage before the accident by signing a form that indicated she did not want to purchase such coverage.
ANPAC and the Dyesses filed cross-motions for summary judgment on the issue of whether ANPAC's policy provided UM benefits at the time of the accident. By judgment dated April 14, 2003, the trial court signed a judgment in favor of the Dyesses and against ANPAC, granting the Dyesses' motion for summary of judgment and imputing UM coverage to ANPAC's policy of insurance in limits equal to the policy's liability limits. The judgment further decreed that "after an express determination that there is no reason for delay," the judgment was designated final and appealable pursuant to Louisiana Code of Civil Procedure Article 1915(B).[2] ANPAC has appealed, urging *451 the trial court erred, as a matter of law, in finding that the rejection of UM coverage by the use of an "X" rather than the initials of the signer was legally insufficient.

II. ANALYSIS
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions, and is favored. La. C.C.P. art. 966 A(2). A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966 B. The movant bears the burden of proving that he is entitled to a summary judgment. La. C.C.P. art. 966 C(2). Whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can properly be resolved within the framework of a motion for summary judgment. Reno v. Travelers Home and Marine Ins. Co., 2002-2637, p. 3 (La.App. 1st Cir.11/7/03), 867 So.2d 751, 753.
Appellate review of a summary judgment is on a de novo basis. Jones v. Estate of Santiago, XXXX-XXXX, p. 5 (La.4/14/04), 870 So.2d 1002, 1006. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Cressionnie v. Intrepid, Inc., XXXX-XXXX, p. 3 (La.App. 1st Cir.5/14/04), 879 So.2d 736, 738-39.
When interpreting an insurance contract, the court must attempt to discern the common intent of the insured and insurer. Reno v. Travelers Home and Marine Ins. Co., 2002-2637 at p. 3, 867 So.2d at 753. Analysis should begin with a review of the words in the insurance contract, and the contract must be enforced as written when the words are clear and explicit and lead to no absurd consequences. Id. The validity of a waiver or rejection of a UM coverage form is determined by the law in effect at the time the waiver was executed. Id.
At the time of the accident, Louisiana Revised Statutes 22:1406 D provided as follows in pertinent part:
(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state ... unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item D(1)(a)(ii) of this Section....
(ii) ... such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative.... A properly completed and *452 signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage....
(Emphasis added.)[3]
Pursuant to this statutory authority, the Commissioner promulgated a form for the rejection or selection of UM coverage on April 28, 1998, in La. Bulletin LIRC 98-01.
In the present case, Ms. Dyess purchased the applicable ANPAC policy on March 5, 2001. On that date, she met with ANPAC agent, Doug Jones, to discuss insurance coverage for her Plymouth Voyager and to sign the paperwork necessary to bind coverage. One of the documents she signed was the UM coverage form promulgated by the Commissioner, which we include herein:

*453 Based on the evidence presented by the parties, it is unclear whether Ms. Dyess or someone else marked the "X" on the UM form. Ms. Dyess submitted an affidavit, in which she stated that: 1) she signed and dated a blank UM form, 2) she did not put the "X" on the form, and 3) she did not know who placed the "X" on the form. Additionally, in her deposition testimony, Ms. Dyess testified that she specifically recalled not placing an "X" on the form. She also explained that she would not have affixed an "X" because the form directed the use of initials for making a selection. She further stated that when she signed the form, she was unsure whether she wanted the UM coverage and did not make a decision at that time. She planned to advise Jones within a couple of days regarding whether she wanted the coverage after discussing the matter with her husband, but the accident occurred two days later. She indicated that as of the time of the accident, she and her husband had not yet made a decision.
Doug Jones's deposition testimony established that he did not remember that Ms. Dyess put the "X" on the form, but he asserted, "I know we would not put an `X' for a client. We would not do that." Jones testified that Ms. Dyess would have had to make a decision regarding the UM coverage in order for him to bind coverage. He stated that before Ms. Dyess left his office, she paid an initial payment towards the six-month policy premium.
The mandatory UM coverage provisions of Louisiana Revised Statutes 22:1406(D) embody strong public policy. Richardson v. Lott, XXXX-XXXX, p. 7 (La.App. 1st Cir.11/7/03), 868 So.2d 64, 70, writ denied, XXXX-XXXX (La.2/13/04), 867 So.2d 707. The object of UM coverage is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. Henson v. Safeco Ins. Companies, 585 So.2d 534, 537 (La.1991). Nevertheless, such coverage may be specifically rejected pursuant to the statutory guidelines. Id. The statute's provisions, however, are to be liberally construed in favor of coverage such that statutory exceptions to the UM coverage requirements are interpreted strictly. Richardson v. Lott, XXXX-XXXX at p. 7, 868 So.2d at 70.
Insurers in Louisiana are required to include UM coverage unless specifically rejected by the insured. Henson v. Safeco Ins. Companies, 585 So.2d at 539. It is the rejection of UM coverage, and not its acceptance, that must be the affirmative act of the insured. Id. Unless the insured's expression of his desire to reject or select lower limits of UM coverage meets the formal requirements of law, the expression does not constitute a valid rejection. Richardson v. Lott, XXXX-XXXX at p. 8, 868 So.2d at 71.
In the present case, the Dyesses urge that Ms. Dyess engaged in no affirmative act that indicated that she rejected UM coverage, and that the purported rejection is ineffective.
In Henson v. Safeco Ins. Companies, 585 So.2d at 535, the named insured signed an application for automobile liability insurance, on which the insurance agent had filled in numerous answer boxes including one which rejected UM coverage. The insured did not sign a separate UM rejection form. Since the application form had already been filled out, the insured was required to affirmatively change the form in order to accept UM coverage. The Henson court found that the insured's mere signing of the application form, without his marking the rejection section himself or initialing the mark made by the agent, was insufficient to establish an affirmative *454 rejection of UM coverage. Id. at 539-540.
But in a number of cases following Henson, the courts have found that where a separate rejection form has been utilized, the fact that someone other than the insured placed the "X" on the form did not result in the invalidation of the rejection. For example, see Knight v. Owens, 03-1064, p. 8 (La.App. 5th Cir.2/23/04), 869 So.2d 188, 193 (finding a valid rejection where the insured's legal representative signed immediately below a pre-selected, checked box indicating an entire rejection of UM coverage); Dabney v. Plaisance, XXXX-XXXX, p. 9 (La.App. 4th Cir.12/4/02), 832 So.2d 1103, 1109, writ denied, XXXX-XXXX (La.4/21/03), 841 So.2d 804 (a pre-printed waiver form was found to specifically reject UM coverage, where the form was filled out by the insurance agent upon the instructions of the insured); Odom v. Johnson, 97-546, pp. 15-16 (La.App. 3d Cir.12/10/97), 704 So.2d 1254, 1263, writs denied, XXXX-XXXX, XXXX-XXXX, XXXX-XXXX (La.5/1/98), 718 So.2d 419, 420, and 421 (where the insured's legal representative placed her initials next to the rejection box in which an insurance agent had placed the typewritten "XX", the court found a valid rejection). However, none of these cases involved the UM coverage form prescribed by the Commissioner because each of the UM forms were executed prior to the promulgation of the Commissioner's form. Accordingly, we do not find the reasoning of these cases to be determinative of the issue presented in this case.
The form at issue directs the insured to make a selection regarding UM coverage by "initial[ing] only one option." And the word "initials" appears underneath the blank line next to each option. The language of the form immediately above the insured's signature line also references the insured's "choice ... made by my initials on this form...." Accordingly, based on the clear and explicit language of the contract, we conclude that proper execution of the form pursuant to Louisiana Revised Statutes 22:1406 D(1)(a)(ii) requires that the initials of the insured or his legal representative be marked next to the coverage selection. Thus, we conclude that a designation with only an "X" is insufficient to constitute a valid rejection of UM coverage. Such an interpretation is consistent with a liberal interpretation of Louisiana Revised Statutes 22:1406 D in favor of UM coverage. Requiring that the insured or his representative affix initials serves the valid purpose of mandating an affirmative act, and if the authenticity of the initials is contested, the initials provide a selection that is susceptible of being identified as a mark made by the insured or his representative.
Accordingly, we find that the UM rejection was invalid and that the Dyesses established as a matter of law that they were entitled to a judgment establishing that ANPAC's policy provided UM benefits at the time of the accident. Because we reach this conclusion, whether Ms. Dyess or someone else marked the "X" on the UM form is immaterial.

III. CONCLUSION
For these reasons, we affirm the trial court's judgment in favor of the Dyesses. Appeal costs are assessed against ANPAC.
AFFIRMED.
NOTES
[1] Cecil Dyess also claims to have suffered "mental and physical damages as a result of ANPAC's arbitrary and capricious refusal to settle or pay plaintiff's claims."
[2] In separate written reasons certifying the judgment as final and appealable, the trial court stated:

In light of the fact that liability is not seriously contested, and the court has been given reason to understand that liability will be stipulated by [ANPAC], and in light of the fact that if this court's ruling is affirmed Ms. Dyess' denial that she placed the "X" on the form will be rendered moot, and in light of the fact that both parties have requested the court to certify this judgment as final and appealable, and in light of the fact that this case will likely resolve itself once the issue presented in the motion is finally determined, and thus judicial economy would be served, this court determines that there is no reason for delay and accordingly certifies the judgment signed on April 14, 2003[as] final and appealable...."
Based on the factors set forth in Motorola, Inc. v. Associated Indem. Corp., XXXX-XXXX, pp. 16-17 (La.App. 1st Cir.10/22/03), 867 So.2d 723, 732, we determine the trial court did not abuse its discretion in designating this judgment as final and appealable. Because the issue of the validity of the UM rejection is not intertwined with remaining issues regarding the insured's entitlement to recover for her personal injuries, there is no relationship between the adjudicated and unadjudicated claims. Additionally, there is no likelihood that the issue regarding UM rejection will be mooted out by further proceedings in the trial court, there is no possibility that this court will have to review the UM issue again if it is presently reviewed, there are no other claims by defendant that will affect the resolution of the UM issue, and since liability is apparently not seriously contested, a decision on the UM issue at this time will likely facilitate resolution of any remaining issues, resulting in reduced litigation costs and fostering judicial economy.
[3] Pursuant to Acts 2003, No. 456, § 3, Louisiana Revised Statutes 22:1406(D) has been amended and redesignated as 22:680. The amendments contained therein are not pertinent to this appeal.