DOWNING, J.
IgThe issue on appeal is whether Terre-bonne Parish Consolidated Government (Terrebonne) had validly waived underin-sured/uninsured (UM) coverage prior to an accident where a City of Houma police officer, Ashli Richardson, was injured by an underinsured motorist. The trial court ruled that Terrebonne validly rejected UM coverage on its policies with United States Fidelity & Guaranty Company (USF & G). The court also ruled that Terrebonne was not responsible for the first $250,000.00 in damages under its self-insured retention (SIR) limit. Richardson appealed the judgment; for the following reasons we affirm the trial court judgment.
FACTS AND PROCEDURAL HISTORY
The facts of this case can be found in Richardson v. Lott, 03-0189, p.p. 2-4 (La.App. 1 Cir. 11/7/03) 868 So.2d 64, 67,68, writ denied, 03-3324 (La.2/13/04), 867 So.2d 707, where this court concluded that the UM rejection form signed October 20, 1998, was not valid because it did not comply with the form statutorily prescribed in LSA-R.S. 22:1406D(l)(a)(ii), effective September 6, 1998. The matter was remanded to the trial court for further proceedings regarding the validity and continuing effect of earlier UM rejection forms.
On May 14, 2004,[1] USF & G filed a motion for summary judgment, but this time relying on a UM selection/rejection form signed by Barry Bonvillain, Terre-bonne Parish President, dated April 10, 1997, for USF & G policy # 30025433901.[2] The policy was effective from January 1, 1997 to January 1, 1999, and the 1997 rejection form was in compliance with the law at the time the policy was issued. Based on the 1997 rejection form, the trial | scourt ruled that there was no UM coverage available to Richardson and that Ter-rebonne was not responsible for the first $250,000.00 under the SIR limits of the USF & G policy, because there was no obligation for a self-insured entity to provide UM coverage on its vehicles. The claims against USF & G and Terrebonne were dismissed. Richardson appealed.
DISCUSSION
Effective September 6, 1998, LSA-R.S. 22:1406(D)(l)(a)(ii)[3] was amended as follows:
A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. Any form executed prior to the effective date of this *569 Act shall be valid only until the policy renewal date; thereafter, the rejection, selection of lower limits, or selection of economic-only coverage shall be on a form prescribed by the commissioner as provided in this Subsection. (Emphasis added).
The resolution of this case turns on whether the USF & G policy (# DRE30032504700) issued for the policy period July 1,1998 to January 1, 2000, was a continuation of an unexpired policy issued for a policy period January 1, 1997 to January 1, 1999. A renewal or substitute policy does not require a new UM rejection form.[4],[5] A new policy signed after September 6, 1998, requires a UM rejection form in compliance with the above statute.
Richardson argues that the policy at issue beginning July 1, 1998 could not be a renewal because a renewal can only occur at the end of the prior unexpired policy. Richardson cites LSA-R.S. 22:636.1A(5), which defines a “renewal” as one issued “at the end of the policy period.” She argues that since this new policy began before the end of the previous policy Rperiod and extended beyond the prior policy period it cannot be categorized as a renewal. She further argues that the agent, J & H Marsh & McLennan, noted in a letter to Terrebonne that the policy issued from January 1, 1997 to January 1, 1999 was being cancelled and rewritten.
We disagree with Richardson’s contention that the issuance of any policy other than a renewal triggers the necessity of a new UM rejection form. Louisiana recognizes “substitute” policies. This court, in Wilkinson v. Louisiana Indemnity/Patterson insurance, 96-0447, p. 11 (La.App. 1 Cir. 11/8/96) 682 So.2d 1296, 1302, defined substitute policies to include situations where there had been coverage and an agreement is made for different coverage. The Wilkinson court stated that where there had been a valid rejection of UM coverage for the previously issued policy, no new UM rejection form is necessary because the prior rejection form is also valid for the substitute policy. Id. 96-0447, p. 10, at p. 1301. Here, as in Wilkinson, there is a previously issued policy with a prior rejection form that was valid at the time it was signed.
In determining whether a substitute policy requires a new UM selection form, we utilize the “material change” test. Lewis v. Lenard, 29,529, pp. 5-6 (La.App. 2 Cir. 5/7/97), 694 So.2d 574, 578. The determinant question is whether the change in the policy is material to the initial selection or waiver of UM coverage and, thus, triggers the need to execute a new selection/rejection UM waiver. Id.
The USF & G policy #30025433901, issued January 1, 1997, was amended to add coverage for mosquito control sprayers.[6] Applying the test of materiality, we conclude under the particular facts of this case, that amending a policy to add pesticide/herbicide coverage is not material to the Isimtial selection/rejection waiver of UM coverage in the policy. Therefore, the re-issued policy did not require the issuance of a new UM seleetion/rejection form.
Richardson’s contention that the agents considered the policy issued July 1, 1998, to be a cancellation and re-issuance rather *570 than a renewal is without merit. The agent’s referral to the policy as being can-celled and reissued, in its July 2, 1998 memo to Terrebonne, was an unfortunate use of language. However, by operation of law, when there is coverage in a prior policy, and an agreement is made for a different coverage that does not materially affect the UM portion of the policy, the reissued policy is a “substitution” rather than a “new” policy and no new UM selection/rejection is necessary.[7] Lewis, 29,529, at p. 3, 694 So.2d at 576. Further, there is no evidence in the record that the policy issued January 1, 1997 was cancelled. In fact the replacement policy itself, issued July 1, 1998, clearly states that it is a “Renewal policy.”[8]
We note that Richardson’s actual assignment of error states that the trial court erred in holding that it was irrelevant as to whether USF & G was the continuous insurer of Terrebonne from 1992 to the date of the accident in 1998. However, the policy preceding the substitute policy, issued by the | fisame insurer, had a valid UM selection/rejection form. The only two policies in question are the ones issued by USF & G in 1997 and 1998, and a valid UM rejection was signed by Barry Bonvil-lain[9] before the effective date that the new UM rejection form was required.
Accordingly, we conclude that the UM rejection form signed by Barry Bonvillain on April 10, 1997, was a valid rejection of UM coverage and continued being a valid UM rejection at least until the substitution policy expired on January 1, 2000, at 12:01 A.M. Therefore, the second assignment of error is without merit.
Richardson alleges in her first assignment of error that the trial court was manifestly erroneous in holding that Danny Domangue had implied authority to sign the UM rejection forms prior to the one at issue on behalf of Terrebonne.
Since we have concluded that the policy issued July 1, 1998 was a substitute policy for the policy issued January 1, 1997, we pretermit the issue of Domangue’s apparent authority or lack thereof. Although Domangue signed the UM rejections in 1995 and 1996, those policies are not at issue and we make no determination as to whether he had or did not have the apparent authority to do so.
We conclude that Barry Bonvillain had direct authority to sign all UM selection/rejection forms and did sign a valid *571 UM waiver in 1997 that extended to the substitute policy issued July 1, 1998. Therefore, the first assignment of error is without merit.
Richardson alleges in her final assignment of error that the trial court erred in ignoring the self-insured retained (SIR) limit of $250,000.00. • She |7argues that Terrebonne is entitled to a full credit for all worker’s compensation benefits paid the plaintiff which may approximate the SIR; thereafter that she is entitled, under the law, to prosecute her claims for UM benefits against USF & G.
We have determined however, that no UM coverage is available to this claimant since the rejection/selection waiver signed by Barry Bonvillain was valid. Therefore, there is nothing for a credit to be calculated against. Terrebonne has been a self-insured entity since 1992. The law does not require self-insured entities to provide itself with UM coverage. LSA-R.S. 82:1041; LSA-R.S. 32:1042; LSA-32:851. See also Tybussek v. Wong, 96-1981 (La.App. 4 Cir. 2/26/97) 690 So.2d 225. Therefore, no provisions of law or contract exist that provide a remedy to this plaintiff for UM coverage.
Thus, the trial court was not manifestly erroneous in “ignoring” Terrebonne’s SIR. This assignment of error is without merit.
DECREE
For the foregoing reasons, we affirm the trial court judgment granting the United States Fidelity & Guaranty Company and Terrebonne Parish Consolidated Government motions for summary judgment. Costs of this appeal are assessed against plaintiffiappellant, Ashli Richardson.
AFFIRMED

. On July 23, 2004, Terrebonne filed a motion for summary judgment to determine the parish's exposure in the event of a valid waiver of UM coverage.

. This policy replaced the USF & G policy # 30025433900 that expired January 1, 1997.

.This statute was re-designated LSA-R.S. 22:680 by Acts 2003, No. 456, Sec. 3; however, the validity of a UM waiver, rejection, or selection is determined by the law in effect at the time the waiver is executed. See Roger v. Estate of Moulton, 513 So.2d 1126, 1131-32 (La.1987).

. See former LSA-R.S. 22:1406(D)(l)(a)(i).

. We note that the rejection form signed by Barry Bonvillain on 10/20/98 would have been valid had it been signed prior to 9/6/98, the effective date of the statute.

.Endorsement UG50130195 added "Pesticide or Herbicide Applicator Coverage.”

. Principles of law consistent with this opinion and the material change test were codified by Acts 1999, No. 732 Sec. 1, and re-designated LSA-R.S. 22:680(1)(a)(ii) reads as follows:
The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create a new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.

.
Policy No.: DRE30032504700
Renewal of: DRE30025433901

. On March 11, 1992. Terrebonne gave its parish president, Bariy Bonvillain, authorization to reject UM on all of its policies.