DOWNING, J.
IsThe issue before us involves a determination of whether a selection of lower limits of uninsured/underinsured (UM) motorist coverage remains statutorily valid after an automobile insurance policy is transferred into a surviving spouse’s name. Lauren Munsch, Sr., had filed for partial summary judgment alleging that the selection of lower limits of UM coverage by an owner’s deceased husband was no longer valid. Adversely, Liberty Mutual Insurance Co.’s (Liberty Mutual’s) cross-motion for summary judgment asserted that the deceased husband’s selection of lower limits of UM coverage remained valid when coverage was effected in the surviving spouse’s name. The trial court entered partial summary judgment in favor of Munsch and denied Liberty Mutual’s cross-motion for partial summary judgment, effectively finding the deceased husband’s UM selection invalid.[1] For the following reasons, we affirm.

Facts and Procedural History

On April 11, 2001, Lauren Munsch was a guest passenger in an automobile driven by Stacy Adkins, the granddaughter of Albert and Georgette Oestriecher, when he was allegedly injured by a third party who rear-ended the vehicle in which he was riding. At the time of the accident, Georgette Oestriecher was the owner of that vehicle and the named insured on the insurance policy at issue. Her husband had died on July 15, 2000.
Through its annual renewals, the insurance policy in question provided for $500,000.00 in liability coverage. On January 1, 1999, |showever, Albert Oestriecher had executed a selection of lower limits for UM coverage in the amount of $50,000.00.
*610 After Albert Oestriecher died, Liberty Mutual sent a notice of renewal. Before the renewal date, Georgette Oestriecher notified Liberty Mutual of her husband’s death, and Liberty Mutual renewed the policy in Georgette’s name. Stacy Adkins, their daughter, was named as an additional insured at this time.
Once litigation commenced, Munsch and Liberty Mutual filed cross-motions for summary judgment. The matter came on for hearing on March 1, 2004. After reviewing the law, evidence and memoranda, and hearing the argument of counsel, the trial court ruled in favor of Munsch. Liberty Mutual appealed, raising three issues for review, summarized as follows:
1.whether the policy ended at the conclusion of the policy period in effect at the time of Albert Oestriecher’s death;
2. whether Georgette Oestriecher is the same named insured as in the previously renewed policy where Albert Oestriecher was listed as the named insured and Georgette was listed as an additional insured;
3. whether a waiver signed by a deceased person can be applied to a driver (Stacy Adkins) who was never insured on the policy at the same time as the deceased. insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.

Apparent Conflict

Before deciding the propriety of the trial court’s rulings on the cross-motions for summary judgment, we first resolve a matter of statutory interpretation. At issue here are provisions of La. R.S. 22:680(l)(a)(ii) governing the rejection, selection of lower limits, or selection of eco-nomicjonly4 UM coverage.[2],[3] Particularly at *611 issue are the following two seemingly inconsistent sentences found in this section:
1. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. (Emphasis added.)
2. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. (Emphasis added.)
We analyze these sentences in turn as they relate to the facts before us and attempt to reconcile them.

{¿Sentence 1

Parsing the first sentence, we read pertinently that a valid UM selection of lower limits will remain valid when a renewal is issued to the same named insured.
We conclude that the “named insured” referenced in sentence 1 is the named insured as defined in the policy. In Bel v. State Farm Mut. Auto. Ins. Co., 02-0360, p. 5 (La.App. 1 Cir. 2/14/03), 845 So.2d 459, 462, in an analogous context, this court found that “named insured or his legal representative” as used in La. R.S. 22:680(l)(a)(ii) means the same thing as “any insured named in the policy” as used in La. R.S. 22:680(l)(a)(i ).[4] In Oncale v. Aetna Cas. and Sur. Co., 417 So.2d 471, 474 (La.App. 1 Cir.1982), this court held that “[w]here a policy of insurance contains a definition of any word or phrase, this definition is controlling.” It further held that “the phrase ‘any insured named in the policy’ found in [the statute] is substantially synonymous with the phrase ‘named insured’ found in the subject insurance policy.” Id.
Further, the validity of a policy upon renewal depends on its being issued to the “same named insured.” However, it is self-evident that a “named insured” comprised of two people, one of whom is deceased, can not be the same as a “named insured” comprised of only one under La. R.S. 22:680(l)(a)(ii), which makes continued validity of the UM selection contingent on a renewal being issued to the “same named insured.”

Sentence 2

Under this sentence, no new UM selection is required upon any change in the policy other than a change in limits of the policy. This sentence also makes it clear *612 that such changes do not create new policies. | ^Accordingly, under the facts before us, the changes in the policy implemented by the surviving spouse do not require a new UM selection.
The clear implication of this sentence’s wording is that UM coverage will remain in force at selected limits when any change to a policy is made other than a change in policy limits. Accordingly, the changes the surviving spouse implemented in her coverage should not affect the validity of the UM selection made by her deceased husband. To read this sentence otherwise would render it almost, but not completely, meaningless.

Reconciliation

Under the facts before us, these sentences from the same paragraph seem contradictory and demand statutory interpretation. In Rainey v. Entergy Gulf States, Inc., 01-2414, pp. 6-7 (La.App. 1 Cir. 6/25/04), 885 So.2d 1193, 1198-99, writs denied, 04-1878, 887 So.2d 478, 04-1884, 887 So.2d 479, 04-1883 (La.11/15/04), 887 So.2d 478, 479, this court summarized the general statutory and jurisprudential rules for statutory interpretation, as follows:
Interpretation of laws is the province of the judicial branch of State government. The starting point for the interpretation [footnote omitted] of a law is the language of the law itself. Rules for interpreting the Revised Statutes and the Civil Code have been enacted by the legislative branch and are found in La. R.S. 1:1 et seq. and Civil Code Article 9 et seq. Louisiana Revised Statute 1:3 provides, in pertinent part, that “[w]ords and phrases ... shall be construed according to the common and approved usage of the language” and the “word ‘shall’ is mandatory.” (Emphasis added.) Louisiana Revised Statute 1:4 provides that “[w]hen the wording of a Section [of the Revised Statutes] is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.” Louisiana Civil Code Article 10 provides that “[w]hen the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.” Louisiana Civil Code Article 13 provides that “[l]aws on the same subject matter must be interpreted in reference to each other.” A court is bound to follow the language of a relevant law. See La. C.C. arts. 1-4.
The jurisprudence has developed additional rules for interpreting laws. In Ransome v. Ransome, 01-2361, p. 8 La.App. 1 Cir. 04/21/02), 822 So.2d 746, 754 appears the following:
Pursuant to the standard rules for statutory construction (1) it is presumed that every provision of law was intended to serve some useful purpose; (2) it is not presumed that the lawmaker intended for any part of a law to be meaningless; (3) the lawmaker is presumed to have enacted the law with full knowledge of all other laws pertaining to the same subject matter; (4) it is the duty of the courts to interpret a provision of law which harmonizes and reconciles it with other provisions pertaining to the same subject matter; and (5) when a law is susceptible to two or more interpretations, that which affords a reasonable and practical effect to the entire act is preferred to one that renders part of the act nugatory.
See also David v. Our Lady of the Lake Hospital, Inc., 02-2675, p. 11 (La.07/02/03), 849 So.2d 38, 46-47; Gregor v. Argenot Great Central Insurance Company, 02-1138, pp. 6-7 (La.05/20/03), 851 So.2d 959, 964. (Emphasis added.)
*613 Further, this court specifically discussed interpretation of the UM statute in Dyess v. American Nat. Property and Cas. Co., 03-1971 (La.App. 1 Cir. 6/25/04), 886 So.2d 448, writ denied, 04-1858 (La.10/29/04), 885 So.2d 592. We observed that the mandatory UM coverage provisions of Louisiana Revised Statutes 22:680 embody strong public policy: “The object of UM coverage is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance.” Id., 03-1971 at pp. 7-8, 886 So.2d at 453. Even though such coverage may be specifically rejected pursuant to the statutory guidelines, the statute’s provisions “are to be liberally construed in favor of coverage such that statutory exceptions to the UM coverage requirements are interpreted strictly.” Id., 03-1971 at p. 8, 886 So.2d at 453. “Unless the insured’s expression of his desire to reject or select lower limits of UM coverage meets the formal requirements of law, the expression does not constitute a valid rejection.” (Emphasis added.) Id.
| RApplying these precepts to the controverted sentences from La. R.S. 22:680(l)(a)(ii), we conclude that they can be harmonized if read inclusively. The first sentence mandates the continuing validity of a UM selection through renewal, reinstatement, substitution or amendment while the parties remain the same (“is issued to the same named insured by the same insurer or any of its affiliates”). Per the second sentence, any change to a valid policy does not require the completion of a new UM selection form unless an insured changes the limits of liability, an act that implicates the amount of UM coverage imputed by law unless a lower selection is made.
Such interpretation gives meaning to both parts of the law at issue and seems to best conform to the purpose of the law. See La. C.C. art. 10.

Standard of Review for Summary Judgment

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966B. In determining whether summary judgment is appropriate, appellate courts conduct a de novo review -of the evidence, employing the same criteria that govern .the trial court’s determination of whether summary judgment is appropriate. Osborne v. JAG Const. Services, Inc., 04-0437, p. 4 (La. App. 1 Cir. 2/16/05), 906 So.2d 601, 603, writ denied, 05-0739 (La.5/6/05), 901 So.2d 1101. Additionally, La. C.C.P. art. 967B provides that when a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of his pleading. His response, by affidavits or as otherwise provided, must set forth specific facts to show that | flthere is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
Further, interpretation of an' insurance contract is usually a legal question that can be properly resolved on a motion for-summary judgment. Graves v. Garden State Life Ins., 03-2208, p. 3 (La.App. 1 Cir. 9/17/04), 887 So.2d 506, 509. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no -reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Id.

*614
Entitlement to Summary Judgment

From the evidence contained in the record in support of and opposed to the Liberty Mutual’s motion, we conclude the trial court did not err in declining to enter summary judgment on its behalf. The record fails to show that Georgette was either a “named insured” or the “same named insured.”
Regarding her being a “named insured,” the record before us contains one page from the policy and two endorsements. These do not, however, contain a specific definition of “named insured.” But the one page from the insurance policy indicates that the surviving spouse is not the “named insured.” In a section entitled, “TRANSFER OF YOUR INTEREST IN THIS POLICY,” the policy provides that “if a named insured shown in the Declarations dies, coverage will be provided for ... the surviving spouse if resident in the same household at the time of death ... as if a named insured shown in the Deelara-tions[.]” Further, the Declarations page lists the deceased husband as the named insured. And the affidavit of Liberty Mutual’s Personal Market Customer Service Manager states that the deceased husband was the “named insured” and that the surviving spouse is |inlisted as an “additional insured.” From the record, therefore, it does not appear that the surviving spouse was listed as a named insured in the Declarations until she asked Liberty Mutual to put insurance in her name. Accordingly, it appears from the record that the surviving spouse was not a named insured in the policy.
Even so, Liberty Mutual argues that the surviving spouse was a named insured. William Shelby McKenzie & H. Alston Johnson, III, 15 La. Civil Law Treatise: Insurance Law and Practice, § 42 at 126-27 (2nd ed.1996) instructs us that “[t]he definition of ‘named insured’ commonly includes the spouse if a resident of the same household.” However, no such definition can be found in the portions of the policy before us.
And even if there were such a definition, for reasons stated above, we conclude that the policy issued to Georgette Oestriecher was not issued to the “same named insured” as before. Accordingly, Liberty Mutual has failed to establish that the UM selection remained valid upon “renewal” even though there were no changes in the limits of liability. It has, therefore, failed to establish its entitlement to entry of summary judgment in its favor.
Conversely, in support of Munsch’s motion for summary judgment, the evidence in the record supports her assertion that Georgette Oestriecher was not the “same named insured” as covered in the previous insurance renewals. While Liberty Mutual argues in brief that the full policy contains a definition that would at least create a question of material fact that would preclude summary judgment, it has failed to come forward with such evidence. Pursuant to La. C.C.P. art. 967B, Liberty Mutual cannot rest on mere allegations or denials, but must come forward with affidavits or otherwise to show facts establishing genuine issues for trial.
|! therefore, we conclude from the evidence in the record that the UM selection of lower limits under consideration was invalid at the time of the accident at issue and that Munsch has established as a matter of law that he is entitled to a judgment establishing that Liberty Mutual’s policy provided UM benefits in the amount of bodily injury liability provided in the policy in accordance with La. R.S. 22:680(l)(a)(i).
DECREE
For the foregoing reasons, we affirm the judgment of the trial court granting *615 Munsch’s motion for summary judgment and denying Liberty Mutual’s cross-motion for summary judgment. Costs of this appeal are assessed to Liberty Mutual Insurance Co.
AFFIRMED
GAIDRY and CARTER, JJ., concur.

. The trial court stated that a new policy was created when the policy was "renewed” in the surviving spouse’s name. Because of our disposition herein, we do not specifically address whether a new policy was actually created. We note, however, the last sentence of La. R.S. 22:680(l)(a)(ii) which addresses the procedure for UM selection. This sentence states, "For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.”

. Louisiana Revised Statutes 22:680(l)(a)(ii) provides as follows:
(ii) Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. An

. We note that George Oestriecher signed the form selecting lower limits for UM coverage on January 1, 1999, and that Acts 1999, No. 732, which amended La. R.S. 22:680(1)(a)(ii) [formerly La. R.S. 22:1406(1)(a)(ii) ] to include the last four sentences above, at issue here, was published on July 26, 1999. Continuing validity of UM waivers is controlled by the law in effect at the time of each renewal. See Collins v. Employers Ins. of Wausau, 402 So.2d 158, 160 (La.App. 1 Cir.1981), where this court stated, "Only those renewal policies *611 issued after the effective date of [the statutory amendment at issue] may have their UM coverage deleted by operation of law” [as provided by the amendment]. See also Myers v. Thiheaux, 365 So.2d 266, 268 (La.App. 3 Cir. 1978). Here, the policy was renewed as of March 10 each year.
Further, under the law in effect prior to the 1999 amendment, the result may have been different. Prior to the amendment, the need for a new UM waiver/limitation of liability form was governed by a test of whether there has been a material change in coverage. Lewis v. Lenard, 29,529, p. 5 (La.App. 2 Cir. 1997), 694 So.2d 574, 577. In Lewis, the court found no material change requiring the execution of a new form where a husband and wife divorced and the policy was renewed in the wife’s name alone. As discussed herein, however, the language of the amendment now controls the requirement for a new UM waiver/limitation of liability form.

. Louisiana Revised Statutes 22:1460D was redesignated as La. R.S. 22:680 by Acts 2003, No. 456, § 3.