978 So.2d 912 (2007)
Jason GREEN
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Carla M. Fontenot, United States Fidelity and Guaranty Company.
No. 2007 CA 0094.
Court of Appeal of Louisiana, First Circuit.
November 2, 2007.
Writ Denied March 7, 2008.
*913 Vincent J. DeSalvo, Baton Rouge, LA, for Plaintiff-Appellant Jason Green.
Howard B. Kaplan, Metairie, LA, for Defendant-Appellee United States Fidelity & Guaranty Co.
Julie N. Degeneres, Baton Rouge, LA, for Defendant-Appellee State Farm Mutual Automobile Ins. Co. and Carla M. Fontenot.
Before CARTER, C.J., PETTIGREW, and WELCH, JJ.
WELCH, J.
In this action for damages arising out of a motor vehicle accident, the plaintiff, Jason Green, appeals a summary judgment granted in favor of the defendant, United States Fidelity and Guaranty Company ("USF & G"), that dismissed the plaintiff's uninsured/underinsured motorist ("UM") claims against USF & G. We affirm.

I. FACTUAL AND PROCEDURAL HISTORY
On February 25, 2005, the plaintiff was operating a vehicle owned by his employer, Cintas Corporation, eastbound on Corporate Boulevard in East Baton Rouge Parish when a vehicle, owned and operated by the defendant, Carla M. Fontenot, made a left turn directly into the path of the plaintiff's vehicle, resulting in an accident. On June 30, 2005, the plaintiff filed a petition for damages, naming as defendants: Carla Fontenot; State Farm Mutual Automobile Insurance Company ("State Farm"), Carla Fontenot's liability insurer; and USF & G, his employer's liability insurer, which allegedly provided UM coverage to the Cintas Corporation on the vehicle driven by the plaintiff.
On August 25, 2006, USF & G filed a motion for summary judgment, contending that it was entitled to be dismissed from the plaintiff's lawsuit because its named insured, Cintas Corporation, had validly executed a rejection of UM coverage. After a hearing, the trial court granted the motion and dismissed the plaintiff's UM claims against USF & G. A judgment in conformity with the trial court's ruling was signed on November 10, 2006, and it is from this judgment that the plaintiff has appealed.[1]
On appeal, the plaintiff contends that the trial court erred in finding that UM coverage was validly rejected, since the authorized representative of the insured did not initial on the line providing for the rejection of UM coverage, but instead, placed an "X" on the line and placed his initials to the left of the "X," and because the "alleged initials" were an "unidentifiable scribble."

II. LAW AND DISCUSSION
A. Summary Judgment Law
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is *914 entitled to judgment as a matter of law. La. C.C.P. art. 966(B). In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. MSOF Corp. v. Exxon Corp., XXXX-XXXX, p. 17 (La.App. 1st Cir. 12/22/05), 934 So.2d 708, 720, writ denied, XXXX-XXXX (La.10/6/06), 938 So.2d 78.
The issue of whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be resolved properly within the framework of a motion for summary judgment. Johnson v. Allstate Ins. Co., 95-1953, p. 3 (La.App. 1st Cir.5/10/96), 673 So.2d 345, 347, writ denied, 96-1292 (La.6/28/96), 675 So.2d 1126. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183.
B. Rejection of UM Coverage
In all automobile liability insurance policies delivered in this state covering vehicles registered in this state, Louisiana law requires UM coverage in the same amount as the bodily injury liability coverage, unless "any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage." La. R.S. 22:680(1)(a)(i). "Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance" for that purpose, be "signed by the named insured or his legal representative" and "shall be conclusively presumed to become part of the policy." La. R.S. 22:680(1)(a)(ii). "A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage." Id.
The object of UM insurance is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. Duncan v. U.S.A.A. Ins. Co., XXXX-XXXX, p. 4 (La.11/29/06), 950 So.2d 544, 547. The UM statute is to be liberally construed, and thus the exceptions to coverage are to be interpreted strictly. Any exclusion from coverage in an insurance policy must be clear and unmistakable, and the insurer bears the burden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits. Duncan, XXXX-XXXX at pp. 4-5, 950 So.2d at 547.
According to the evidence submitted by USF & G in support of its motion for summary judgment, a UM selection form for the policy at issue was executed by Kevin Ryan on June 30, 2004. On the UM selection form, a hand-written "X" with a circle around it was placed by option "5," which reads: "I do not want [UM] Coverage. I understand that I will not be compensated through [UM] coverage for losses arising from an accident caused by an uninsured/underinsured [motorist]." Illegible hand-written initials were placed to the left of the "X" just above the "5." "Cintas Corporation" was typed into the blank for "Named Insured or Legal Representative," the form was signed (by Kevin Ryan), it was dated "6/30/04" and policy numbers "D002A00280," "D002A00281," "D002A00282," and "D002A00283" were typed in the blank above "Policy Number."
*915 USF & G also submitted the affidavit of Kevin Ryan executed on July 20, 2006. According to Kevin Ryan's affidavit, on June 30, 2004, he was the Director of Administration for Cintas Corporation, and as the Director of Administration, his duties included obtaining insurance for Cintas Corporation. Kevin Ryan also stated that on June 30, 2004, he was the legal representative of the Cintas Corporation who was responsible for rejecting UM coverage, that he expressly rejected UM coverage by inscribing his initials beside the "X," that by placing his initials next to the "X," he specifically intended to reject UM coverage on behalf of the Cintas Corporation, and that the initials next to the "X" were his initials.
The plaintiff contends the rejection of UM coverage signed by Kevin Ryan on behalf of the Cintas Corporation was invalid because it was not properly initialed to indicate a clear, unmistakable waiver of UM coverage on the form itself, and therefore, USF & G's motion for summary judgment should have been denied. In support of this contention, the plaintiff cites this court's decision in Dyess v. American National Property and Casualty Company, XXXX-XXXX (La.App. 1st Cir.6/25/04), 886 So.2d 448, writ denied, XXXX-XXXX (La.10/29/04), 885 So.2d 592.
In Dyess, the plaintiffs, Mr. and Ms. Dyess, filed suit against their alleged UM insurer seeking to recover damages for bodily injuries sustained by Ms. Dyess as the result of a motor vehicle accident, which occurred two days after Ms. Dyess signed the UM form. The plaintiffs and the insurer filed cross-motions for summary judgment on the issue whether the insurer's policy provided UM benefits at the time of the accident. The trial court granted the summary judgment in favor of the plaintiffs and imputed UM coverage to the insurer's policy in limits equal to the policy's liability limits. The insurer appealed, contending that the trial court erred, as a matter of law, in finding that the rejection of UM coverage by the use of an "X" rather than the initials of the person who signed the form was legally insufficient. This court agreed with the trial court and concluded that "a designation with only an `X' is insufficient to constitute a valid rejection of UM coverage. . . . Requiring the insured or his representative affix initials serves the valid purpose of mandating an affirmative act, and . . . the initials provide a selection that is susceptible of being identified as a mark made by the insured or his representative." (Emphasis added.) Dyess, XXXX-XXXX at p. 10, 886 So.2d at 454. In reaching this decision, this court noted that according to the evidence submitted by the parties, it was unclear whether Ms. Dyess or someone else marked the "X" on the UM form. Ms. Dyess submitted an affidavit stating that she signed and dated a blank UM form, she did not put an "X" on the form, and that she did not know who put an "X" on the form. In Ms. Dyess' deposition testimony, she testified that she specifically recalled not placing an "X" on the form, that she would not have affixed an "X" because the form directed the use of initials for making a selection, and that at the time she signed the form, she was unsure whether she wanted UM coverage and had not made a decision because she wanted to discuss the matter with her husband. Thus, because the named insured had not taken an affirmative act to "clearly and unmistakably" reject UM coverage, the purported UM rejection was invalid.
Dyess, while instructive, is factually distinguishable from this case. In this case, although Kevin Ryan, the legal representative of the named insured, placed an "X" (with a circle around it) by his selection of rejection of UM coverage, he also placed his initials to the left of the "X." The affidavit of Kevin Ryan further established that he personally placed the "X" on the *916 line to reject UM coverage, that he personally placed his initials next to the "X," and that he specifically intended to reject UM coverage on behalf of the Cintas Corporation.
Based upon our de novo review of the record in this matter, we find that USF & G met its burden of proving there were no genuine issues of material fact that the legal representative of the Cintas Corporation, the named insured under the policy, clearly and unmistakably rejected UM coverage by the affirmative act of placing an "X" and his initials to the left of the "X" on the form prescribed by the commissioner of insurance and that this rejection was valid. Therefore, summary judgment was appropriate as a matter of law.

III. CONCLUSION
For the above and foregoing reasons, the November 10, 2006 judgment of the trial court granting summary judgment in favor of USF & G and dismissing the plaintiff's uninsured/underinsured motorist claims against USF & G is hereby affirmed. All costs of this appeal are assessed to the plaintiff/appellant, Jason Green.
AFFIRMED.
NOTES
[1] The November 10, 2006 judgment was designated as a final judgment for the purpose of an immediate appeal after an express determination that there was no just reason for delay. See La. C.C.P. art. 1915(B). However, as the judgment dismissed USF & G from this suit, certification of the judgment as final under La. C.C.P. art. 1915(B) was unnecessary. See La. C.C.P. art. 1915(A)(1); La. C.C.P. art. 1911; Motorola, Inc. v. Associated Indemnity Corporation, XXXX-XXXX, pp. 10-11 (La.App. 1st Cir.4/30/03), 867 So.2d 715, 721.