# United States Court of Appeals
# for the Fifth Circuit

———————————

No. 25-50487
Summary Calendar

———————————

United States Court of Appeals
Fifth Circuit

**FILED**
November 17, 2025

Lyle W. Cayce
Clerk

PHILIP M. ROSS, *individually* AND *doing business as* SCIENTIFIC PARANORMAL INVESTIGATIVE RESEARCH INSTITUTE OF TEXAS,

*Plaintiff—Appellant*,

*versus*

THE HONORABLE CHARLES ANTHON STEPHENS, II, *in his official capacity as Judge, County Court-at-Law Number 2, Comal County, Texas*; TONI MORTON, *in her official capacity as professional Guardian, Texas Department of Aging and Disability Services Guardianship Program*,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:24-CV-1460

———————————————————————

Before DAVIS, JONES, and HO, *Circuit Judges*.

PER CURIAM:[*]

After a Texas state court and court-appointed guardian denied Philip Ross leave to contract with a mentally incompetent woman, Ross sued the

———————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 25-50487

judge and guardian in federal court for civil-rights violations. The district court characterized Ross's suit as a collateral attack on the state court's judgment of guardianship and sua sponte dismissed for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine. We AFFIRM.

On May 23, 2019, Defendant-Appellee Charles A. Stephens, presiding judge of the Comal County Court at Law No. 2, adjudicated Shelley Thomson to be mentally incapacitated. He appointed the Texas Health & Human Services Commission (Commission) to serve as Thomson's permanent guardian.[1] Defendant-Appellee Toni Morton is a Guardianship Specialist and Commission employee, who served as Thomson's guardian for the Commission and arranged for Thomson to be admitted to a memory-care unit of a nursing facility in New Braunfels, Texas.

After the state court found Thomson to be incapacitated, Plaintiff-Appellant Philip Ross, a lawyer, tried to enter into a contract with Thomson to serve as her attorney. Judge Stephens did not allow the representation to proceed, voided the attorney-client agreement, and entered a restraining order that barred Ross from contacting Thomson without Morton's approval. Ross appealed these decisions, unsuccessfully. In 2023, he resigned from the Texas state bar in lieu of disciplinary action.

In June 2024, Ross again tried to contract with Thomson, this time, for alleged part-time employment. In Ross's words, "[a]fter many years of frustrated state court appellate attempts to set aside the guardianship, restore capacity, or appoint a successor guardian, Ross and Thomson came up with a plan to begin a process of restoring her capacity, self-sufficiency and financial independence by engaging in an employment relationship." Ross

---

[1] *See Guardianship of Thomson*, No. 13-19-517-CV, 2021 WL 265372, at *1 (Tex. App.—Corpus Christi–Edinburg Jan. 21, 2021, no pet.).

presented to Morton a purported employment contract between him and Thomson. Morton allegedly "failed or refused to approve his offer of employment." Judge Stephens, in turn, allegedly "failed or refused to supervise Morton." Ross does not challenge the form or substance of these decisions. Instead, he contends they deprived him and Thomson of due process, equal protection, and freedom of association. In his view, they also constituted retaliation against him for his advocacy "against State-sponsored guardianship abuse[.]"

Ross sued pro se in federal court, where he asserted civil-rights claims under 42 U.S.C. § 1983 against Judge Stephens and Morton in their official capacities. His original complaint sought injunctive relief permitting him to "employ" Thomson. But Thomson died five weeks after Ross sued, so he reframed the suit as a § 1983 action for money damages against Judge Stephens and Morton in their individual capacities. Acting on a magistrate judge's recommendation, the district court sua sponte dismissed the case for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine.[2] It also denied Ross leave to file a third amended complaint. Ross timely appealed. Our review of the dismissal is de novo.[3]

According to the *Rooker-Feldman* doctrine, federal district courts lack subject-matter jurisdiction over suits that seek to "overturn" a state-court judgment.[4] The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the

---

[2] *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415–16 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983).

[3] *See Weaver v. Tex. Cap. Bank*, 660 F.3d 900, 904 (5th Cir. 2011) (per curiam) ("We also review a district court's rulings on questions of law, such as res judicata and subject matter jurisdiction, de novo.").

[4] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005).

No. 25-50487

district court proceedings commenced and inviting district court review and rejection of those judgments."[5]

Taking each of these considerations in turn: Ross alleges he is a "state-court loser" and that the guardianship and related rulings were rendered before this suit was filed. Finally, as the district court observed, the allegations in Ross's operative complaint "*solely* relate to decisions made by Judge Stephens and Thomson's court-appointed guardian regarding her guardianship," and cannot be adjudicated without second-guessing both the guardianship itself and rulings entered to effectuate it. In other words, this case "invit[es] district court review and rejection of those judgments."[6]

Ross, however, argues his claims fall outside the scope of *Rooker-Feldman* because they arise from "administrative acts or omissions of a judge and court-appointed guardian." But he offers no authority suggesting that a guardianship proceeding is anything but judicial. And the only case he cites as substantive support for his appeal—*Saloom v. Texas Department of Family and Child Protective Services*—is distinguishable. In *Saloom*, a plaintiff alleged injuries caused by nonjudicial conduct that eventually culminated in a child-custody order.[7] Ross's suit is the opposite: it asserts injury caused by the judgment of guardianship and rulings emanating from it, such as the order restraining his contact with Thomson. Unlike the *Saloom* plaintiff, Ross would have no injury but for these state-court decisions. The district court

---

[5] *Id.* at 284.

[6] *Id.*

[7] *See Saloom v. Tex. Dep't of Family & Child Protective Servs.*, 578 F. App'x 426, 429 (5th Cir. 2014) (per curiam) ("A federal lawsuit is not barred if the alleged injuries were caused by the defendants' actions rather than by the state court judgment, even if the defendants' actions led to the state court judgment.").

No. 25-50487

correctly found it lacked subject-matter jurisdiction over such claims.[8] It also correctly denied Ross leave to file a third amended complaint, which merely sought to add the Commission as a defendant. AFFIRMED.

---

[8] *See Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994) ("Constitutional questions arising in state proceedings are to be resolved by the state courts."); *see also Musslewhite v. State Bar of Tex.*, 32 F.3d 942, 947 (5th Cir. 1994) (holding as to allegations of retaliatory disciplinary proceedings by state bar, "our consideration of these contentions would require a collateral examination of the state court judgment. That we cannot do.").